## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| JULIE BEBERMAN, | ) |
|           **Plaintiff**, | ) |
|           v. | )    **Civil Action No. 2014-0020** |
| U.S. DEPARTMENT OF STATE and SECRETARY OF STATE JOHN KERRY, IN HIS OFFICIAL CAPACITY, | ) |
|           **Defendants**. | ) |

**Attorneys:**
**Julie Beberman, Esq.,**
Alexandria, VA
    *Pro se*

**Joycelyn Hewlett, Esq.,**
St. Thomas, U.S.V.I.
    *For Defendants*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Temporary Restraining Order or Preliminary Injunction," filed by Plaintiff Julie Beberman on March 18, 2016. (Dkt. No. 56). The Motion was followed on March 20, 2016 with a "Motion to Substitute Revised Exhibit 7 to Motion for TRO or Preliminary Injunction" (Dkt. No. 57); a "Memorandum in Support of Motion for TRO or Preliminary Injunction" (Dkt. No. 58); a "Motion to File Exhibits Under Seal" (Dkt. No. 59); and a "Motion to File Memorandum in Excess of Page Limit, Nunc Pro Tunc" (Dkt. No. 60).[1] On March 21, 2016, Defendants filed a "Motion to Strike and Opposition to Motion to File 43-Page Brief" (Dkt. No. 61), followed by an "Opposition to Motion for Temporary Restraining

---

[1] Magistrate Judge Ruth Miller granted Plaintiff's Motion to Substitute Revised Exhibit 7 and Plaintiff's Motion to File Exhibits Under Seal on March 21, 2016. (Dkt. Nos. 62 and 63, respectively).

Order" (Dkt. No. 65) on March 23, 2016. Beberman filed a Reply on March 24, 2016. (Dkt. No. 70).

The Court will grant Plaintiff's Motion to File Memorandum in Excess of Page Limit,[2] deny Defendants' Motion to Strike the 43-Page Brief, and deny Plaintiff's Motion for Temporary Restraining Order ("TRO") or Preliminary Injunction.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

In May 2014, Plaintiff Julie Beberman ("Plaintiff" or "Beberman") filed a Complaint against the U.S. Department of State and Secretary of State John Kerry in his Official Capacity, alleging gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 and age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 633a. (Dkt. No. 1). Plaintiff also asserted a claim pursuant to the Privacy Act of 1974, 5 U.S.C. § 522a(g)(1)(D). *Id.* Beberman alleged numerous discriminatory acts by her Supervisor, Visa Chief Eric Cohan, who rated Beberman's job performance as a Foreign Service Officer with the U.S. Department of State when she was stationed in Caracas, Venezuela in 2012. *Id.* Beberman subsequently filed a First Amended Complaint in which, *inter alia*, she withdrew her Title VII gender discrimination claim. (Dkt. No. 21). The parties later filed a stipulation to dismiss the Privacy Act claim set forth in the First Amended Complaint, which the Court accepted. (Dkt. Nos. 35, 38).

On March 20, 2016, Beberman filed the instant "Motion for Temporary Restraining Order

---

[2] The Court notes that it will grant Plaintiff's Motion for Excess Pages only to avoid the additional time that would be consumed in addressing the motion for injunctive relief if Plaintiff were required to refile her Memorandum within the page limit prescribed by the Court's Local Rules. *See* LRCi 7.1(d). Plaintiff's 43-page Memorandum (Dkt. No. 58), plus her initial eight-page filing (Dkt. No. 56), is more than double the twenty-page limit set forth in the Local Rules. Plaintiff is advised that such excess will not be accepted by the Court in the future in the absence of the kind of compelling circumstances which the Court does not view as existing here.

or Preliminary Injunction" in which she seeks an Order from the Court "directing the Department of State and Secretary Kerry to retain her in her current assignment at the U.S. Embassy in Malabo, Equatorial Guinea until she fulfills her assignment in December 2017." (Dkt. No. 56). Beberman asserts that all four factors a court must consider prior to issuing a Temporary Restraining Order or Preliminary Injunction weigh in her favor. *Id.* In summary, Beberman claims that she has a "high likelihood of success [o]n the merits" given her long record of successful service in the federal government, except for the few months when she was discriminated against on the basis of age and gender; the harm is irreparable because she will be "uprooted in the middle of an assignment and will be deprived of benefits that she currently receives and will not receive once she leaves"; the balance of equities favor her remaining in Equatorial Guinea where she has been extremely productive and has received favorable evaluations; and the public interest weighs in favor of "enjoining adverse actions proximately caused by discriminatory conduct and animus." *Id.* She adds that there is no other avenue of relief because, while she is pursuing administrative grievances, the Foreign Service Grievance Board can only grant her relief from termination and does not have the authority to require the State Department to allow her to remain at the Embassy in Malabo. *Id.*

For the reasons that follow, Beberman's Motion for a Temporary Restraining Order or Preliminary Injunction will be denied.

## II. DISCUSSION

### A. Standard of Review

Under Rule 65 of the Federal Rules of Civil Procedure, the Court may grant injunctive relief with a temporary restraining order or a preliminary injunction. *Am. Tel. & Tel. Co. v. Winback & Conserve Prog. Inc.,* 42 F.3d 1421, 1427 (3d Cir. 1994). Injunctive relief is "'an extraordinary remedy. . . which should be granted only in limited circumstances.'" *Id.* (quoting

*Frank's GMC Truck Ctr., Inc. v. GM Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)). The same legal standard applies to requests for a temporary restraining order and a preliminary injunction. *Smith v. Litton Loan Servicing, LP*, 2005 WL 289927, at *6 (E.D. Pa. Feb. 4, 2005).

To prevail on a motion for a temporary restraining order or preliminary injunctive relief, the moving party must show each of the following four elements: (1) a reasonable probability of success on the merits; (2) that she will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *See N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *Allegheny Energy, Inc. v. DQE, Inc.,* 171 F.3d 153, 158 (3d Cir. 1999)).

A "district court must consider [the] four elements in determining whether to grant a preliminary injunction[.]" *Goodwin v. Castille*, 465 F. App'x 157, 160 (3d Cir. 2012). "Although the Court must balance all four factors to determine whether it should order injunctive relief, as a practical matter, a 'plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate.'" *Wilson v. Spaulding*, 2015 WL 8781510, at *2 (M.D. Pa. Dec. 15, 2015) (quoting *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)). If a plaintiff is successful in satisfying the first two factors, the court will then consider, to the extent relevant, the second two factors. *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 100 F. App'x 70, 74 (3d Cir. 2004). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC,* 428 F.3d 504, 508 (3d Cir. 2005).

### B. Analysis

#### 1. Irreparable Harm

It is well-established that "[a] failure to demonstrate irreparable injury must necessarily

result in the denial of a preliminary injunction." *ACE Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 F. App'x 727, 732 (3d Cir. 2009) (citing *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989); *NutraSweet Co.*, 176 F.3d at 153 ("In the absence of irreparable injury, no preliminary injunction would lie, even if the other three elements . . . were found."). Because Beberman has failed to establish irreparable harm, her motion for injunctive relief must fail.

Irreparable harm is "harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co.*, 882 F.2d at 801. To satisfy this element, the party moving for injunctive relief must demonstrate that "irreparable injury is *likely* in the absence of an injunction." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 217 n.11 (3d Cir. 2014) (emphasis in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)) (quotations omitted). It is not enough "for the harm to be serious or substantial, rather, it must be so peculiar in nature that money cannot compensate for the harm." *Bieros v. Nicola*, 857 F. Supp. 445, 445 (E.D. Pa. 1994) (citing *Ecri v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)). The word irreparable "'means that which cannot be repaired, retrieved, put down again, atoned for[.]'" *A.O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976) (quoting *Gause v. Perkins*, 3 Jones Eq. 177, 69 Am. Dec. 728 (1857)).

Beberman identifies two areas where she allegedly would suffer "irreparable harm": (1) having to unexpectedly leave her residence and assignment in Equatorial Guinea, and return to Washington, D.C.—which she terms "personal irreparable harm," and (2) losing "substantial benefits" including hardship pay, service needs differential, and access to the Student Loan Repayment Program. (Dkt. No. 56 at 5).

It is well-established that "[t]he irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be

5

compensated after the fact by monetary damages. This is not an easy burden." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000). In *Morton v. Beyer*, 822 F.2d 364 (3d Cir. 1987), the Third Circuit found that not even termination from a job sufficed for irreparable harm. Plaintiff claimed that he would be irreparably harmed unless he was employed while his lawsuit was pending because his wages were his sole source of income. The Court held: "Although we are not insensitive to the financial distress suffered by employees whose wages have been terminated, we do not believe that loss of income alone constitutes irreparable harm." *Id.* at 372. The nature of the remedy there was "purely economic in nature and thus compensable in money," and did not warrant injunctive relief. *Id.*

Here, Beberman cites the loss of particular monetary benefits—which are clearly economic in nature—as one of the bases for irreparable harm. However, should she win on the merits of her action, she can be adequately compensated by monetary damages, where appropriate.[3] Accordingly, Beberman's loss of economic benefits does not constitute irreparable harm.

Beberman has also claimed that being required to unexpectedly leave her residence and work assignment in Equatorial Guinea and return to Washington, D.C. constitutes irreparable harm. While such a change may be inconvenient or undesirable, such non-economic harm is insufficient to establish irreparable harm. This is not the kind of "extreme deprivation" that irreparable harm is intended to remedy. *Morton*, 822 F.2d at 372 n.13; *see also Moteles v. Univ. of Pa.*, 730 F.2d 913, 919 (3d Cir. 1984) ("[i]f a discharge from employment with all of its attendant difficulties is not irreparable injury, it is obvious that the involuntary transfer to another shift amounts to nothing more than inconvenience—not enough to warrant the issuance of a preliminary

---

[3] The Government notes in its Opposition that Beberman would not be entitled to recoup post allowance or other post-specific damages which are designed to offset higher costs of living overseas. (Dkt. No. 65 at 5). Even accepting this as true, it would not render the harm that she *actually* suffers irreparable.

6

injunction.") (citing *Sampson v. Murray*, 415 U.S. 61, 91-92 (1974)); *Fuller v. Highway Truck Drivers & Helpers Local 107*, 228 F. Supp. 287, 290 (E.D. Pa. 1964), *aff'd* 428 F.2d 503 (3d Cir. 1970) (plaintiffs' claim of being subjected to less desirable work assignments and being required to report for work earlier in the morning was an inconvenience that did not constitute irreparable harm, and "has never been regarded as a type of damage immeasurable in dollars. Courts daily award damages for pain, suffering and far more serious inconveniences."); *cf. Noorhasan v. de Jongh,* 2012 WL 1153285, at *6 (D.V.I. Mar. 31, 2012) (terminated employee claimed reputational injury was sufficient to establish irreparable harm; Court held that if it was to "find irreparable harm simply because a plaintiff claimed reputational loss as a consequence of an adverse employment action, this would eviscerate the requirement that a plaintiff show that extraordinary circumstances exist in order to establish noneconomic irreparable harm. That is not the rule in this Circuit.").

Further, in an ADEA case, in addition to back pay, an employee who was discriminated against may be made whole by an award of promotion, and front pay or reinstatement, as available remedies. 29 U.S.C. § 626(b). Thus, since reinstatement to Beberman's position in Equatorial Guinea could be achieved through the legal process, she cannot show irreparable harm on that basis. Because she has another avenue of relief, a TRO/preliminary injunction is not appropriate. *See Sampson*, 415 U.S. at 90 ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

Because Beberman has not established irreparable harm, on this ground alone her Motion for a TRO or Preliminary Injunction must be denied. *ACE Am. Ins. Co.,* 306 F. App'x at 732; *NutraSweet Co.*, 176 F.3d at 153.

### 2. Remaining Factors

#### a. Likelihood of Success on the Merits

Beberman's First Amended Complaint alleges, *inter alia*, employment discrimination based on age under the ADEA. Age discrimination claims generally proceed according to the three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Willis v. UPMC Children's Hosp. of Pittsburgh,* 808 F.3d 638, 644 (3d Cir. 2015). If the plaintiff establishes a *prima facie* case of discrimination, and the employer articulates a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that the employer's proffered nondiscriminatory reason was pretextual. *Id.* Pretext can be shown if "the defendant has treated similarly situated, substantially younger individuals more favorably. . ." *Id.* at 645.

Beberman asserts that, in 2012, as a consequence of his discriminatory animus, Cohan treated younger colleagues at the Embassy more favorably than she was treated. (Dkt. Nos. 21, 58). In determining whether employees are similarly situated for purposes of assessing disparate treatment, a court must undertake "a fact-intensive inquiry based on a whole constellation of factors," on a case-by-case basis. *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 305, 306 (3d Cir. 2004); *see also McCullers v. Napolitano*, 427 F. App'x 190, 195 (3d Cir. 2011).

It cannot be determined, on this undeveloped record, whether Beberman is reasonably likely to succeed on the merits of her claims, particularly given the "fact intensive" nature of the analysis a court must undertake when assessing disparate treatment claims under the ADEA, and the shifting burdens of production that apply. *Monaco*, 359 F.3d at 306. Accordingly, Beberman cannot show, at this juncture, a reasonable likelihood of success on the merits. *See Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 863, 864 (S.D. Ohio 2008) (denying motion for TRO because of a "question of fact that the Court cannot resolve at this time" and thus

plaintiff "could not establish a strong likelihood of success on the merits."); *Blue Planet Software, Inc. v. Games Int'l, LLC*, 334 F. Supp. 2d 425, 438-39 (S.D.N.Y. 2004) (factual issue that could not be resolved at stage of litigation militated against either party being able to demonstrate likelihood of success on the merits). Thus, this factor also favors the denial of injunctive relief.

### b. Harm to Nonmoving Party; Public Interest

Given that Plaintiff has not shown irreparable harm or likelihood of success on the merits, the Court need not reach the final two TRO/Preliminary Injunction factors. *Lighthouse Inst. for Evangelism, Inc.*, 100 F. App'x at 74; *see also Hynoski v. Columbia Cnty. Redev. Auth.*, 485 F. App'x 559, 563 (3d Cir. 2012) (because party did not establish likelihood of success on the merits or risk of irreparable harm, district court did not abuse its discretion in denying motion for preliminary injunction).

In any event, the Court notes that Defendants have argued in their Opposition that granting a TRO or preliminary injunction would result in even greater harm to them. Defendants attached a Declaration by Petra J. Zabriskie, the Deputy Chief of Mission at the U.S. Embassy in Malabo, Equatorial Guinea. (Dkt. No. 65-2). Ms. Zabriskie avers that since being notified on February 26, 2016 that Beberman had been denied tenure following her third review by the Commissioning and Tenure Board ("CTB"), the Embassy made arrangements for replacement personnel to travel to Malabo. Ms. Zabriskie also notes that the Embassy "has a finite supply of [suitable] housing . . . from a security standpoint. Another Embassy employee has been living in a hotel for several months, and Embassy Malabo has already arranged for this employee to take over Ms. Beberman's house after she departs for Washington, D.C. . . . It would be costly for Embassy Malabo to procure or rent additional housing and bring it into compliance with our security standards." *Id.* In view of these considerations, the harm to the State Department—both institutionally and operationally—that would result from the grant of an injunction outweighs Beberman's individual concerns.

With regard to the public interest, Beberman notes that the public interest is served by protecting an employee from being subject to adverse actions resulting from age discrimination. (Dkt. No. 56 at 6). As stated above, however, it cannot be determined, at this juncture, whether age discrimination is at issue here. On the other hand, Defendants argue persuasively in their Opposition that the State Department's policy for employees whose separation is on hold, while they are seeking relief before the Foreign Service Grievance Board, is to have those employees return to Washington on separation orders to work in a domestic assignment until resolution of their relief request. (Dkt. No. 65 at 7). Defendants assert that "it is not in the public interest for someone who has been denied tenure as a Foreign Service Officer by three CTBs to remain working as a diplomat overseas." *Id.* at 8. The Court agrees that the Government has raised a significant issue which suggests to the Court that the public interest counsels against the grant of injunctive relief.

In sum, although not necessary to the Court's analysis, both the harm to the nonmoving party and the public interest factors support the denial of injunctive relief.

### III.   CONCLUSION

Based on the foregoing, the Court will deny Plaintiff's Motion for Temporary Restraining Order or Preliminary Injunction. (Dkt. No. 56).[4]

An appropriate Order accompanies this Memorandum Opinion.

Date: March 24, 2016
                                                              _____/s/_____
                                                              WILMA A. LEWIS
                                                              Chief Judge

---

[4] The Court will also grant Plaintiff's "Motion to File Memorandum in Excess of Page Limit, Nunc Pro Tunc" (Dkt. No. 60) and deny Defendants' "Motion to Strike" Beberman's 43-page Memorandum (Dkt. No. 61).