DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| JULIE BEBERMAN, ) | |
| ) | |
| **Plaintiff**, ) | |
| ) | |
| v. ) | Civil Action No. 2014-0020 |
| ) | |
| U.S. DEPARTMENT OF STATE and ) | |
| SECRETARY OF STATE JOHN KERRY, ) | |
| IN HIS OFFICIAL CAPACITY, ) | |
| ) | |
| **Defendants**. ) | |
| _____) | |

**Attorneys:**
**Julie Beberman, Esq.,**
Dulles, VA
    *Pro se*

**Joycelyn Hewlett, Esq.,**
St. Thomas, U.S.V.I.
    *For Defendants*

## **MEMORANDUM OPINION**

**Lewis, Chief Judge**

    THIS MATTER comes before the Court on a "Motion to Reconsider Denial of TRO and Preliminary Injunction," filed by Plaintiff Julie Beberman ("Beberman") on March 29, 2016. (Dkt. No. 76). In her Motion to Reconsider, Beberman asks the Court to "correct its manifest errors of law and fact" that she alleges were made in its Memorandum Opinion and Order filed on March 24, 2016 (Dkt. Nos. 74, 75). In response to an Order of this Court entered on March 30, 2016 (Dkt. No. 79), Defendants, U.S. Department of State and Secretary of State John Kerry in his Official Capacity ("Defendants"), filed an "Opposition to Plaintiff's Motion to Reconsider Denial of Temporary Restraining Order and Preliminary Injunction" on April 1, 2016. (Dkt. No. 81). On that same day, Beberman filed a "Motion for an Opportunity to Reply" (Dkt. No. 82) in which she

requested until 8:00 a.m. on Monday, April 4, 2016 to file a response to Defendants' Opposition. On April 3, 2016, Beberman filed a Reply. (Dkt. No. 83).[1]

For the reasons that follow, the Court will deny Plaintiff's "Motion to Reconsider Denial of TRO and Preliminary Injunction." In view of Beberman's filing of a Reply, the Court will deny as moot Plaintiff's Motion for an Opportunity to Reply.

I. **BACKGROUND FACTS AND PROCEDURAL HISTORY**

In May 2014, Beberman filed a First Amended Complaint against Defendants alleging age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 633a. (Dkt. No. 21). She claimed that her Supervisor, Visa Chief Eric Cohan, who rated Beberman's job performance as a Foreign Service Officer with the U.S. Department of State when she was stationed in Caracas, Venezuela in 2012, discriminated against her on the basis of age. *Id.*

Subsequently, Beberman was posted to the U.S. Embassy in Malabo, Equatorial Guinea. On March 20, 2016, Beberman filed a "Motion for Temporary Restraining Order or Preliminary Injunction" in which she sought an Order from the Court "directing the Department of State and Secretary Kerry to retain her in her current assignment at the U.S. Embassy in Malabo, Equatorial Guinea until she fulfills her assignment in December 2017." (Dkt. No. 56 at 1). She asserted that she would be required to depart Equatorial Guinea on or before March 27, 2016 as a result of being denied tenure, which she claimed was proximately caused by Cohan's discriminatory animus. *Id.* at 1, 2. Beberman claimed that she has a "high likelihood of success [o]n the merits" given her long record of successful service in the federal government, except for the few months when she

---

[1] In addition to the above submissions, Beberman filed an "Emergency Motion to Hold in Abeyance Issuance of Travel Orders or for Emergency Relief" on March 30, 2016 (Dkt. No. 77); a "Motion to Supplement Emergency Motion" on March 30, 2016 (Dkt. No. 78); and a "Second Motion to Supplement Emergency Motion" on March 31, 2016 (Dkt. No. 80). The Court will address these Motions in a separate Memorandum Opinion and Order.

2

was discriminated against on the basis of age; that the harm resulting from being forced to move was irreparable because she would be "uprooted in the middle of an assignment and will be deprived of benefits that she currently receives and will not receive once she leaves"; that the balance of equities favor her remaining in Equatorial Guinea where she has been extremely productive and has received favorable evaluations; and that the public interest weighs in favor of "enjoining adverse actions proximately caused by discriminatory conduct and animus." *Id.* at 6.

On March 24, 2016, the Court denied Beberman's Motion for a TRO and Preliminary Injunction. (Dkt. No. 74). The Court found that Beberman could not establish irreparable harm because, if she prevailed in the lawsuit, she could be adequately compensated by money damages and equitable relief. *Id.* at 6-7. The Court further found that being "unexpectedly uprooted" did not constitute the kind of "extreme deprivation" that irreparable harm was intended to remedy. *Id.* (citing *Morton v. Beyer*, 822 F.2d 364, 372 n.13 (3d Cir. 1987); *Moteles v. Univ. of Pa.*, 730 F.2d 913, 919 (3d Cir. 1984); *Fuller v. Highway Truck Drivers & Helpers Local 107*, 228 F. Supp. 287, 290 (E.D. Pa. 1964), *aff'd,* 428 F.2d 503 (3d Cir. 1970)). Because Beberman did not establish irreparable harm, the Court stated that, on that ground alone, her Motion for a TRO or Preliminary Injunction must be denied. *Id*. at 7 (citing *ACE Am. Ins. Co. v. Wachovia Ins. Agency, Inc.,* 306 F. App'x 727, 732 (3d Cir. 2009) and *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)).

The Court then addressed the remaining factors a party must show in order to be granted a TRO or preliminary injunction. With regard to likelihood of success on the merits, the Court observed that, in addition to the burden-shifting framework, ADEA employment discrimination cases are extremely fact-intensive, particularly when determining whether employees were similarly situated for purposes of assessing disparate treatment—the kind of claim Beberman is making here. *Id.* at 8 (citing *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 305, 306 (3d Cir.

2004)). On the undeveloped record present in this case, the Court found that it could not determine whether Beberman was reasonably likely to succeed on the merits of her claims, and therefore that she could not show, at this juncture, a reasonable likelihood of success on the merits. *Id*. Accordingly, the Court found that this factor also favored the denial of injunctive relief. *Id.* at 9.

Because Plaintiff had not shown irreparable harm or likelihood of success on the merits, the Court noted that it was not required to reach the final two TRO/Preliminary Injunction factors—whether an injunction would result in greater harm to the nonmoving party and whether an injunction was in the public interest. *Id.* (citing *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch,* 100 F. App'x 70, 74 (3d Cir. 2004) and *Hynoski v. Columbia Cnty Redev. Auth.,* 485 F. App'x 559, 563 (3d Cir. 2012)). Nonetheless, the Court addressed these factors. It accepted Defendants' argument that granting a TRO or preliminary injunction would result in even greater harm to Defendants because the U.S. Embassy in Malabo—after being notified on February 26, 2016 that Beberman had been denied tenure—had made arrangements, and started to implement plans, for replacement personnel; had arranged for another Embassy employee to take over Beberman's house; and had asserted that it would be costly to procure additional housing for Embassy employees that complied with its security standards. (Dkt. No. 74 at 9).

Further, although Beberman argued that the public interest was served by protecting an employee from being subject to adverse actions resulting from age discrimination, the Court noted that it could not be determined, at this juncture, whether age discrimination was at issue. In addition, the Court found persuasive Defendants' argument that it was not in the public interest for someone who had been denied tenure as a Foreign Service Officer to remain working as a diplomat overseas—which suggested to the Court that the public interest prong also counseled against the grant of injunctive relief. *Id.* at 10.

On March 29, 2016, Beberman filed the instant "Motion to Reconsider Denial of TRO and

4

Preliminary Injunction." (Dkt. No. 76). As discussed below, Beberman has not presented sufficient grounds to warrant reconsideration, and her Motion will therefore be denied.

## II. DISCUSSION

### A. Legal Standard

"In order to prevail on a motion for reconsideration, a plaintiff must show '(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct clear error of law or fact or to prevent manifest injustice.'" *Butler v. Pa. Bd. of Probation & Parole*, 613 F. App'x 119, 125 (3d Cir. 2015) (quoting *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)); *see also* Local Rule of Civil Procedure 7.3. The Third Circuit states that "clear error exists if, '"after reviewing the evidence,' [the reviewing court is] 'left with a definite and firm conviction that a mistake has been committed."'" *Norristown Area Sch. Dist. v. F.C.*, __ F. App'x __, 2016 WL 98571, at *3 n.8 (3d Cir. Jan. 8, 2016) (quoting *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1220 (3d Cir. 1993)).

Reconsideration "is an extraordinary remedy and should be granted sparingly." *Boldrini v. Wilson*, 2013 WL 619774, at *1 (M.D. Pa. Feb. 19, 2013) (citing *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999)). Motions for reconsideration "are not substitutes for appeals and are not to be used as 'a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not.'" *Greene v. V.I. Water & Power Auth.*, 2012 WL 4755061, at *2 (D.V.I. Oct. 5, 2012) (quoting *Bostic v. AT & T of the V.I.*, 312 F. Supp. 2d 731, 733 (D.V.I. 2004)).

### B. Analysis

Beberman asserts that the Court made manifest errors of law and/or fact when it addressed

5

each of the four elements she must show in order to be granted relief: (1) a reasonable probability of success on the merits; (2) irreparable harm if the injunction is denied; (3) granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief. *See N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012).

**1. Irreparable Harm**

Beberman argues that the Court made a "fundamental error of law" in finding that she would not suffer irreparable harm. (Dkt. No. 76 at 1). She states that the ADEA does not provide compensatory damages—only back pay and other equitable relief. She maintains that certain monetary benefits she currently receives, such as hardship pay, service needs differential, access to the Student Loan Repayment Program, and recruitment and retention incentives, would not be available to her once she relocates to Washington, D.C., and would not be compensable under the ADEA. According to Beberman, because the ADEA remedies could not make her whole, she would suffer irreparable harm. *Id.* at 2-3.

The Court finds that Beberman's argument in this regard does not identify a "fundamental error of law" in the Court's ruling. "The ADEA permits reinstatement, back pay, and other 'legal or equitable relief as may be appropriate,' 29 U.S.C. § 626(b), but not 'compensatory damages for pain and suffering or emotional distress.'" *Barton v. Zimmer, Inc.*, 662 F.3d 448, 454 (7th Cir. 2011) (quoting *Comm'r of Internal Revenue v. Schleier*, 515 U.S. 323, 326 (1995)); *see also* 29 U.S.C. § 633a(c) (provision of ADEA which applies to Federal Government employees, allowing such employees to bring civil action "for such legal or equitable relief as will effectuate the purposes of this chapter," and noting in § 633a(b) that appropriate remedies include reinstatement or hiring employees with or without backpay, as would effectuate the ADEA policies). In other words, while the ADEA does not allow certain damages of a compensatory nature, it nonetheless allows a broad spectrum of legal and equitable relief.

6

Indeed, it is well established that the ADEA's "broad language" gives courts "the power 'to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter[.]'" *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 373 (3d Cir. 1987) (quoting *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 795-96 (3d Cir. 1985) (quoting 29 U.S.C. § 626(b)). "'The inclusion of equitable relief strengthens the conclusion that Congress intended victims of age discrimination to be made whole by restoring them to the position they would have been in had the discrimination never occurred.'" *Id.* (quoting *Maxfield*, 766 F.2d at 796).

In that context, courts have ruled that broad equitable relief, in the form of reimbursement for the loss of various types of benefits, are available under the ADEA. For example, in *Curtis v. Unionville-Chadds Ford Sch. Dist.*, 2013 WL 1874919, at *7 (E.D. Pa. May 1, 2013), the court found that a number of different forms of compensation sought by the plaintiff—training, benefits, front pay, bonuses, pension, seniority, and continuing education—were available under the ADEA because those damages sounded in equity. The court in *Curtis* cited *Blum*, where the Third Circuit found that lost pension benefits were recoverable as front pay under the circumstances presented. *Id.* The *Curtis* court also cited *Shea v. Icelandair*, 925 F. Supp. 1014, 1033 (S.D.N.Y. 1996), which held that an ADEA plaintiff was entitled to restoration of benefits and pension. *Id.; see also Ridgell-Boltz v. Colvin,* 565 F. App'x 680, 683 (10th Cir. 2014) (in case involving federal employee, stating that ADEA "provides for legal and equitable relief, including reinstatement, back pay, and other pecuniary benefits associated with the job" but not compensatory damages); *Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 623 (5th Cir. 1996) (opining that plaintiff suing under ADEA may recover damages as compensation for pecuniary losses of fringe benefits); *Comerford v. Potter*, 2011 WL 6181848, at * (M.D. Fla. Dec. 13, 2011) (observing that fringe benefits were ordinarily recoverable for post office employee under 29 U.S.C. § 633a(c)); *Bonura v. Chase Manhattan Bank*, N.A., 629 F. Supp. 353, 355 (S.D.N.Y. 1986) (finding that, in addition to straight

7

wages or salary, "back pay awarded under the [ADEA] may include those benefits that would have accrued to plaintiffs in the course of their employment by defendant . . . includ[ing] profit sharing, vacation pay, medical benefits and pension benefits."); *cf. Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1563 (11th Cir. 1986) (back pay under Title VII may include recovery for overtime, shift differentials, commissions, tips, cost-of-living increases, merit increases, and raises due to promotion).[2]

In view of the legal relief and broad equitable relief available under the ADEA to make a plaintiff whole, the Court rejects Beberman's contention that the benefits she claims she would lose if she is required to leave her post in Equatorial Guinea, if properly compensable under the circumstances here,[3] would be unredressable under the ADEA and thus render her harm irreparable. Accordingly, the Court finds that it did not make a "clear error of law" when it ruled

---

[2] In her Reply, Beberman cites *Smith v. Office of Personnel Mgmt.*, 778 F.2d 258 (5th Cir. 1985), for the proposition that "[n]othing in the ADEA indicates an intent by Congress to permit the recovery of damages beyond lost wages" for federal employees. *Id.* at 261. However, in *Smith*, the Fifth Circuit did not challenge the EEOC's determination that Smith, who had been discriminated against on the basis of age, should be made "whole in terms of restoration of rank and other benefits which he may have lost as a result of actions improperly taken against him." *Id.* at 260. Instead, the Fifth Circuit rejected Smith's claim for lost past and future outside consulting income as compensatory damages, stating that such damages were not compensable under the ADEA. *Id.* at 260-62. The *Smith* court also cited *Lyons v. Allendale Mut. Ins Co.,* 44 F. Supp. 1343 (N.D. Ga. 1980), for the proposition that compensatory damages in the form of moving costs expended by an employee who was discriminatorily fired and had to move, were not compensable as consequential damages under the ADEA. It was in that context that the *Smith* court made the statement that "the purpose of the ADEA, at least in those cases involving the federal government, was not to allow recovery of general and consequential damages." *Id.* at 262. It is quite clear, however, that outside consulting income and moving expenses are a far cry from the type of hardship and incentive benefits that are at issue here. Accordingly, the fact that those damages were deemed non-compensable under the ADEA in *Smith* has no bearing on the issue before the Court.

[3] The Court is not rendering a decision or offering an opinion as to whether Beberman would in fact be entitled to be compensated for the type of benefits that she cites, in view of the fact that she would be living in Washington, D.C. instead of Equatorial Guinea. That issue will be the subject of a separate analysis and opinion, if and when necessary.

that Beberman's economic loss arguments do not constitute irreparable harm, *i.e.*, "harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

Beberman's second argument is that the Court "drew an improper inference, constituting a manifest error of fact" when it stated that reinstatement to her post in Equatorial Guinea could be achieved through the legal process. (Dkt. No. 76 at 3). While not contesting that reinstatement is available under the ADEA, she argues that because the position would be filled, it would be unavailable to her. Beberman claims that "[n]ow is the only time that the Court can offer her the equitable relief that will prevent her from suffering irreparable harm." *Id.*

As a preliminary matter, a determination of whether a position is available to which a plaintiff may be reinstated is made at the time of judgment. *Maxfield,* 766 F.2d at 796. Because the time of judgment will be some time in the future, it cannot now be definitively determined that Beberman's current position would be filled at that later time.

In any event, the law provides that courts have great discretion in fashioning a reinstatement remedy. For example, the Third Circuit affirmed a district court's decision ordering an ADEA plaintiff's reinstatement to a job that was "substantially similar," noting that although the plaintiff contended that the two jobs were not commensurate, "the 'process of recreating the past will necessarily involve a degree of approximation and imprecision.'" *Wilhelm v. Pennsylvania,* 118 F. App'x 611, 614 (3d Cir. 2004) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 372 (1977)). Further, in *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001), in the context of a Title VII employment discrimination claim, the Supreme Court discussed front pay and reinstatement. The Court stated that "when an appropriate position for the plaintiff is not immediately available without displacing an incumbent employee, courts have ordered reinstatement upon the opening of such a position and have ordered front pay to be paid

9

until reinstatement occurs." *Id.* at 846.

Accordingly, there are a panoply of equitable remedies the Court could fashion should Beberman prevail on her ADEA claim. The Court therefore rejects her argument that, if she is not left in place now, she will suffer irreparable harm.

Beberman's third argument is that having to move from one continent to another constitutes irreparable harm. This is simply a restatement of an argument that the Court previously rejected, and does not, therefore, provide proper grounds for reconsideration. *Greene*, 2012 WL 4755061, at *2 (motions for reconsideration "are not to be used as a vehicle for registering disagreement with the court's initial decision [or] for rearguing matters already addressed by the court[.]").

In sum, Beberman has failed to demonstrate that the Court made a clear error of law in finding that she did not establish irreparable harm. Her arguments in that regard are therefore rejected.

**2. Reasonable Likelihood of Success on the Merits**

Beberman argues here that the Court "erred" in not making a finding on the likelihood of success on the merits. (Dkt. No. 76 at 3).[4] She points out that the parties are "already familiar with the evidence that would be produced at any hearing in this matter, since much of the same evidence is relevant to [her] grievances pending before the Foreign Service Grievance Board, which [Defendants have] already investigated." *Id.* at 4. She asserts that because Defendants did not rebut the evidence she presented, and they have access to such evidence, the Court "must" reach the likelihood of success on the merits prong, particularly because this prong is "uncontested." *Id.* at

---

[4] Beberman characterizes the Court's ruling as not making a "finding" on the likelihood of success on the merits element. Actually, the Court found that due to the undeveloped nature of the record, together with the fact-intensive nature of the analysis that must be conducted and the shifting burdens of production under the ADEA, it could not be determined whether Beberman is reasonably likely to succeed on the merits of her claim; and, therefore, she could not show, at this juncture, a reasonable likelihood of success on the merits. (Dkt. No. 74 at 8).

10

5.

Beberman submitted a considerable amount of information concerning the age discrimination she allegedly suffered in 2012 when she was stationed at the U.S. Embassy in Caracas. (Dkt. Nos. 58, 64). Nonetheless, that fulsome amount of information does not change the Court's conclusion that, at this juncture, Beberman cannot show a reasonable likelihood of success on the merits. The fact remains, as Beberman acknowledges, that there were criticisms of her work performance leveled by a former supervisor. Beberman's allegations alone are therefore insufficient to establish that she has a reasonable likelihood of succeeding in carrying the ultimate burden of persuasion on the issue of age discrimination. A fact-intensive review of the evidence is required to analyze Beberman's allegations, Defendants' Response, and Beberman's Reply in accordance with the shifting burdens of production that apply to each party and the ultimate burden of persuasion that Beberman bears. *Willis v. UPMC Children's Hosp. of Pittsburgh,* 808 F.3d 638, 644 (3d Cir. 2015). Moreover, Beberman's claim that she was discriminated against in comparison to younger people at the Embassy also necessitates a fact-intensive review to determine whether the comparators were in fact similarly situated. *Monaco*, 359 F.3d at 305, 306; *see also McCullers v. Napolitano*, 427 F. App'x 190, 195 (3d Cir. 2011).[5] Finally, Beberman's burden of establishing

---

[5] Beberman contends that the Court must set forth findings of fact and conclusions of law on each of the four factors unless fewer are dispositive, citing a Sixth Circuit case. (Dkt. No. 76 at 3-4). Once again, Beberman incorrectly assumes that the Court did not make a finding on the likelihood of success element. Moreover, Third Circuit case law provides that a court must "consider" the four elements in determining whether to grant a preliminary injunction. *Goodwin v. Castille*, 465 F. App'x 157, 160 (3d Cir. 2012) (citing *Iles v. de Jongh*, 638 F.3d 169, 172 (3d Cir. 2011)). In addition, the Third Circuit has ruled that if a plaintiff fails to establish *any* element in its favor, a preliminary injunction is inappropriate. *NutraSweet Co.*, 176 F.3d at 153). Based on this authority, the Court's determination that Beberman did not establish irreparable harm essentially ends the matter. Nonetheless, the Court *did* consider the remaining TRO/Preliminary Injunction elements in its Memorandum Opinion and found Beberman's attempts to establish these elements lacking. (Dkt. No. 74).

a reasonable likelihood of success on the merits is made even more challenging because her request for injunctive relief incorporates yet another level of alleged discrimination. Specifically, Beberman claims that her impending departure from Equatorial Guinea—which the requested injunction seeks to prevent—was caused by the fact that she was denied tenure, which in turn was proximately caused by the alleged discrimination committed in 2012 by her former supervisor that formed the basis for the underlying lawsuit.[6] This additional level of alleged discrimination necessarily requires further fact-intensive review.

> Ultimately, the Court ruled that:
>
> [I]t could not be determined, on this undeveloped record, whether Beberman is reasonably likely to succeed on the merits of her claims, particularly given the fact-intensive nature of the analysis a court must undertake when assessing disparate treatment claims under the ADEA, and the shifting burdens of production that apply. *Monaco*, 359 F.3d at 306. Accordingly, Beberman cannot show, at this juncture, a reasonable likelihood of success on the merits.

(Dkt. No. 74 at 8). There is no factual or legal manifest error in this conclusion, and the Court rejects Beberman's arguments to the contrary.[7]

---

[6] Indeed, the overwhelming majority of the information that Beberman has submitted in support of her Motion for a TRO/Preliminary Injunction dealt with alleged discrimination related to the underlying lawsuit—that Cohan allegedly discriminated against her in 2012. (Dkt. Nos. 56, 58, 64). By comparison, there is very little information relating to her new contention that she was denied tenure in February 2016 as a result of the alleged underlying discrimination. Basically, Beberman claims that Cohan's alleged discriminatory animus was reflected in a 2012 Employee Evaluation; and that a 2013 and 2014 determination of whether she would be tenured relied on that 2012 Evaluation. (Dkt. No. 58 at 2). Beberman then infers that the alleged discriminatory animus resulted in the denial of her tenure, but there is no documentation before the Court regarding the basis for the denial of tenure in or about February 2016.

[7] Beberman also takes issue with the Court's citation to two cases—*Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 863, 864 (S.D. Ohio 2008) and *Blue Planet Software, Inc. v. Games Int'l, LLC*, 334 F. Supp. 2d 425, 438-39 (S.D.N.Y. 2004)—in concluding that a reasonable likelihood of success on the merits was not shown. Beberman claims that "[n]either case stands for the proposition that a Court can deny a Motion for a Temporary Restraining Order or for a Preliminary Injunction because the factual record has not been developed." (Dkt. No. 76 at 4). Beberman's contentions notwithstanding, the cases support the proposition that, if factual disputes on material issues exist, a likelihood of success on the merits is not established. In

### 3. Greater Harm to the Nonmoving Party

Beberman claims that the Court made a "manifest error of law" in ignoring the evidence she presented that showed that her presence at the Embassy in Equatorial Guinea "actually benefit[ted] the nonmoving party as shown by the excellent reviews, awards, and letters of commendation she has received" while serving there. (Dkt. No. 76 at 5). She also asserts that the Court erred in "not reading . . . as a whole" the Declaration from the Deputy Chief of Mission—attached to Defendants' Opposition to her Motion for TRO/Preliminary Injunction—and argues that, pursuant to her reading, her presence at the Embassy "causes no harm." *Id.* at 6.

In her Reply, Beberman analyzes in detail a second Declaration submitted by the Deputy Chief of Mission, Petra Zabriskie, as an exhibit to Defendants' Opposition to the Motion to Reconsider. In this Declaration, Ms. Zabriskie further describes the difficulties the Embassy allegedly would face if Beberman remained at the Embassy. She states that "[t]he repeated delays in Ms. Beberman's departure over the past few weeks have forced me and two other colleagues to haphazardly adjust and readjust our tasks in order to cover Ms. Beberman's duties while the

---

*Kendall*, where there were disputed issues of fact on material elements of a misappropriation claim, the court ruled that the movant "could not establish a strong likelihood of success on the merits," as would be "required to help justify the extraordinary remedy of issuing a [TRO] because legitimate questions exist" on the elements of the claim. *Kendall*, 630 F. Supp. 2d at 864. In *Blue Planet,* the parties cross-moved for preliminary injunctions. Encountering "a factual issue that cannot be resolved at this stage of litigation," the court held that neither party demonstrated a likelihood of success on the incontestable registration issue, and that the issue would have to be raised at trial. 334 F. Supp. 2d at 438-39.

Even on this undeveloped record, Beberman herself cites numerous criticisms that Cohan made of her work performance that are potential legitimate non-discriminatory reasons for the adverse employment action—such as that she issued a visa to an applicant despite a direct match to a "hit" in the Department of Homeland Security's lookout system and FBI fingerprint record, and exhibited an "apparent lack of concern" over that case; and that she had committed potential Visa Lookout Accountability violations which represent "serious lapse[s] in judgment and a failure to follow standard procedures." *See, e.g.,* Dkt. No. 56 at 3-4; Dkt. No. 58 at 3-41. This indicates that material questions of fact exist in this case, which militate against a finding that a reasonable likelihood of success has been established.

uncertainty plays out"; three different people have provided "intermittent direction" to a new employee in Beberman's section of the Embassy which is "struggling to efficiently handle a backlog of work and respond to several missed deadlines"; she scheduled an Embassy employee who had been staying in a hotel for several months to move into Beberman's house once it was vacated, and that employee cannot receive his household effects until he occupies a permanent residence; and the anticipated housing assignment of that employee would prevent the Embassy from losing approximately $65,000 invested to bring Beberman's residence up to security and safety standards. (Dkt. No. 81-1). Beberman responds that granting her request to remain at the Embassy will end "any immediate minor harm supposedly caused by delays, extensions, and uncertainty," as she would perform her assigned duties and "operations will continue smoothly." (Dkt. No. 83 at 5). If she stays at her house, the Embassy would not lose the money invested to bring the residence up to security standards, and the Embassy employee would still be at the hotel—the same circumstance he was in while she was working there. *Id.* at 5-7.

Based on the second Declaration by Ms. Zabriskie, which provides additional details surrounding the Embassy's staffing and housing concerns, and Beberman's response thereto, the Court finds that there would not be greater harm to Defendants if the Court granted Beberman injunctive relief. While the current employee would remain in a hotel, without access to his household effects, it appears from even Ms. Zabriske's acknowledgement that this would simply maintain the situation as it now exists, and as it has existed for "several months." Further, the Court agrees with Beberman that the grant of an injunction would result in less, not greater, adjustment and readjustment of tasks, uncertainty, and lack of direction—all of which appear to have been caused by the circumstances of Beberman's departure. Finally, the Court agrees that Beberman's occupancy of her residence would not result in a monetary loss to Defendants for having brought the house up to security standards. In short, based on the information contained in the parties'

reconsideration filings, Beberman has demonstrated that granting injunctive relief would not result in even greater harm to Defendants.[8]

The Court's ruling in favor of Beberman on this TRO/Preliminary Injunction element does not change the Court's conclusion that there is no basis for reconsideration of the Court's denial of Beberman's Motion for a TRO/Preliminary Injunction. As this Court noted in its initial Memorandum Opinion, if a plaintiff has not shown irreparable harm and likelihood of success on the merits—as is the case here—the Court need not even reach the greater harm to the non-moving party factor. *Lighthouse Inst. for Evangelism, Inc.*, 100 F. App'x at 74. Indeed, the Third Circuit has gone even further in noting that "in the absence of irreparable injury, no preliminary injunction would lie, even if the other three elements . . . were found." *NutraSweet Co*., 176 F.3d at 153. Accordingly, in view of the other findings contained herein, Beberman's Motion for Reconsideration will still be denied.

4. **Public Interest**

Beberman states that the Court made

a manifest error of law in finding that because the Court has decided not to reach the likelihood of success on the merits element, then age discrimination is just a speculative interest, whereas the Department's interest in moving a non-tenured employee to Washington is significant.

---

[8] It is worthy of mention that, in her Motion for a TRO/Preliminary Injunction, Beberman did not address whether granting the Motion "will result in even greater harm to the nonmoving party." *Sidamon-Eristoff,* 669 F.3d at 386. Rather, she argued that allowing her to remain would actually benefit the Defendants because of her allegedly stellar work at the Embassy. (Dkt. No. 56). An argument that focuses on the *benefits* to Defendants if her motion is granted addresses a different question from whether Defendants would *suffer greater harm* if the motion is granted. Beberman's new focus here is being considered by the Court on reconsideration because of the additional evidence provided by the second Zabriskie Declaration, which was not available for Beberman to respond to in her initial filing and, thus, was not before the Court in its initial ruling. *Max's Seafood*, 176 F.3d at 677. The Court, therefore, considers this a "new evidence" rather than a "clear error" issue.

(Dkt. No. 76 at 6).

This conclusory argument does not present valid grounds for reconsideration. While Beberman characterizes the Court's finding as a "manifest error of law," her argument represents nothing more than her disagreement with the Court's finding. *See Greene*, 2012 WL 4755061, at *2. In short, Beberman has failed to present any legitimate challenge to the Court's conclusion that the public interest counsels against the grant of injunctive relief, in view of the State Department's interest in not keeping an employee, who has been denied tenure, working as a diplomat overseas.[9]

### III. CONCLUSION

In view of the foregoing, Beberman has provided no legitimate grounds for the Court to reconsider its March 24, 2016 Memorandum Opinion and Order denying her Motion for a Temporary Restraining Order or Preliminary Injunction. Accordingly, the Court will deny Beberman's "Motion to Reconsider Denial of TRO and Preliminary Injunction" (Dkt. No. 76) and deny as moot Plaintiff's Motion for an Opportunity to Reply (Dkt. No. 82).

An appropriate Order accompanies this Memorandum Opinion.

Date: April 4, 2016 _____/s/_____
                                                                              WILMA A. LEWIS
                                                                              Chief Judge

---

[9] Here, Beberman's tenure decision was deferred twice, and denied on the third occasion. (Dkt. No. 65-2).