## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| JULIE A. BEBERMAN,<br><br>                Plaintiff<br><br>v.<br><br>U.S. DEPARTMENT OF STATE and<br>SECRETARY OF STATE REX TILLERSON,<br>in his official capacity,<br><br>                Defendants. | Civ. No. 14-0020<br><br>**OPINION** |

THOMPSON, U.S.D.J.[1]

## INTRODUCTION

This matter has come before the Court upon the Motion to Dismiss Plaintiff's Seventh Amended Complaint by Defendants United States Department of State and Secretary of State Rex Tillerson, in his official capacity (collectively, "Defendants"). (ECF No. 138.) Plaintiff Julie Beberman ("Plaintiff") opposes (ECF No. 143) and has also filed a Motion to Amend Count 2 of the Seventh Amended Complaint (ECF No. 145). Defendants oppose. (ECF No. 146.) The Court has addressed these Motions together and decided them upon the written submissions, without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, Defendants' Motion is granted in part, and Plaintiff's Motion is denied.

## BACKGROUND

### I.    Procedural History

This case arises out of Plaintiff's employment as a Foreign Service Officer within the Department of State and the Department's alleged discrimination against Plaintiff, which she

---

[1] The Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

claims caused her to be denied tenure. Plaintiff filed the present lawsuit on May 9, 2014. (ECF No. 1.) She filed an application for a TRO or preliminary injunction on May 13, 2014 (ECF No. 9), the denial of which Plaintiff appealed on April 4, 2016 (ECF No. 87). On March 6, 2017, the Third Circuit issued its mandate affirming the district court. (ECF No. 104.) This case was reassigned to the Honorable Anne E. Thompson on May 8, 2017. (ECF No. 108.)

In June 2017, the Court had five pending motions to amend the complaint by Plaintiff and two motions to dismiss by Defendants. In an Order and Opinion on September 1, 2017, the Court resolved the motions, denying Plaintiff's fifth motion to amend, granting in part Plaintiff's sixth motion to amend, and denying Defendants' motions to dismiss without prejudice and with leave to refile after Plaintiff filed a new complaint. (ECF Nos. 129, 130.) The Court directed Plaintiff to file a Seventh Amended Complaint to serve as the operative complaint in this action. (ECF No. 130.) After the Court denied Plaintiff's motion for reconsideration (ECF Nos. 135, 136), Plaintiff filed the Seventh Amended Complaint on October 16, 2017 (ECF No. 137).

Defendants promptly moved to dismiss. (ECF No. 138.) Plaintiff opposed (ECF No. 143), Defendants replied (ECF No. 144), and then Plaintiff moved to amend her Seventh Amended Complaint as to Count 2 (ECF No. 145). Defendants opposed, and Plaintiff replied. (ECF Nos. 146, 148.) These Motions are presently before the Court.

## II.    Factual Background

Plaintiff's Seventh Amended Complaint pleads seven Counts: (1) discriminatory denial of tenure, (2) tort claims for infliction of emotional distress, (3) discriminatory animus proximately causing denial of tenure, (4) retaliatory and discriminatory denial of opportunity to serve as backup consular officer causing harm, including proximately causing tenure denial, (5) retaliatory and discriminatory transfer due to Ambassador Furuta-Toy's conduct, (6) retaliatory

2

and discriminatory transfer, and (7) retaliatory failure to make tenure and promotion recommendation. (*See generally* Seventh Am. Compl., ECF No. 137.) These Counts find statutory basis in the Age Discrimination in Employment Act of 1967 ("ADEA").

Plaintiff accepted employment with the State Department in January 2010 and was confirmed as a Foreign Service Generalist on June 30, 2011. (*Id.* ¶¶ 12, 19.) She had "a limited career appointment that would expire if she were not granted tenure within five years" of her appointment. (*Id.* ¶ 61.) Plaintiff was assigned to the Embassy in Caracas, Venezuela from October 2011 to November 2012. (*Id.* ¶¶ 20, 62.) There she was supervised by Deputy Visa Chief Shane Myers ("Myers"), Consul General Dale Rumbarger ("Rumbarger"), and Visa Chief Eric Cohan ("Cohan"). (*Id.* ¶¶ 64–65.) Plaintiff was then transferred to the Bureau of African Affairs from December 2012 until December 2014. (*Id.* ¶ 68.) After that interim appointment, Plaintiff began a three-year post at the Embassy in Malabo, Equatorial Guinea. (*Id.* ¶¶ 26, 69.)

Plaintiff claims that while at Embassy Caracas she was discriminated against and treated differently by her supervisors because she was an older woman and her visa refusal rate was lower than that of younger men (*id.* ¶¶ 89–90, 107), allegedly prompting her supervisors to issue unfavorable reviews in her employee evaluation reports ("EERs") (*id.* ¶ 153), cut short her assignment in Caracas, and cause her to lose her designated assignment at the Embassy in Port-au-Prince, Haiti (*id.* ¶ 155). During this time, Plaintiff alleges that Cohan acted outrageously, maliciously, and oppressively towards her (*id.* ¶ 182), thereby deliberately inflicting emotional harm (*see, e.g., id.* ¶¶ 186–87, 191–92). Plaintiff also claims that David Franz ("Franz"), a remote employee in the Visa Office who investigates Visa Lookout Accountability ("VLA") violations, was involved with and influenced by Myers, Rumbarger, and Cohan, and he consequently failed to provide Plaintiff VLA training at Embassy Caracas until she had

3

committed VLA violations. (*Id.* ¶¶ 199–200.) She claims Franz identified a conflict of interest because of his wife's employ at the Embassy, but still referred Plaintiff's violations to a VLA panel and treated her differently. (*Id.* ¶¶ 201–02, 206–08.) The panel found Plaintiff had committed violations and issued a one-day disciplinary suspension. (*Id.* ¶¶ 211–12.) Plaintiff claims that this same violation process was handled very differently for another Foreign Service Officer and older male colleague, John Elliot ("Elliot"). (*Id.* ¶¶ 203–04.) At this time, Plaintiff engaged in mediation with the State Department for her Equal Employment Opportunity ("EEO") complaints, and she believes that then Deputy Assistant Secretary, Marcia Bernicat ("Bernicat"), held a retaliatory animus against her and had conflicts of interest. (*Id.* ¶¶ 217, 219– 22.) According to Plaintiff, this animus, in addition to that of her supervisors, had a negative effect on her later assignments and her tenure review. (*See, e.g., id.* ¶ 213.)

On February 26, 2016, Plaintiff was denied tenure by the Winter 2015 Commissioning and Tenure Board ("CTB"). (*Id.* ¶¶ 70–71.) The Foreign Service Grievance Board ("FGSB") granted temporary interim relief from termination while Plaintiff appealed her denial of tenure. (*Id.* ¶¶ 73–74.) Plaintiff further alleges that Ambassador Julie Furuta-Toy ("Furuta-Toy") had a negative view of Plaintiff from individuals at consular affairs, and acting in retaliation, denied Plaintiff's request to remain in Malabo while her FGSB grievance was pending. (*Id.* ¶¶ 242, 246.) Plaintiff again compares herself and her treatment to Elliot, "an older male Foreign Service Officer, [who] had not engaged in any activity protected under the ADEA" (*id.* ¶ 251), who was also denied tenure but was treated more favorably afterwards (*id.* ¶¶ 250, 251–52). Finally, Plaintiff claims that despite positive EER ratings, Furuta-Toy and Deputy Chief of Mission Petra Zabriskie ("Zabriskie") refused to recommend her for tenure in retaliation for her conduct at Malabo and EEO grievances. (*Id.* ¶¶ 267–70.) Plaintiff claims that she has exhausted

4

all administrative remedies with respect to these claims against the Department of State. (*Id.*
¶¶ 42–76.) Plaintiff was issued separation orders and transferred to Washington without further assignment (*id.* ¶ 74). In November 2016, Plaintiff received a retroactive assignment to the Bureau of African Affairs where she is currently employed. (*Id.* ¶ 76.)

## LEGAL STANDARD

### I.    Motion to Dismiss

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). The court, however, may disregard conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). A complaint which does not demonstrate more than a "mere possibility of misconduct" must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Although a district court generally must confine its review to the pleadings on a Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types

5

of material" beyond the pleadings. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). The Court "may also take into account 'public record[s]' and 'undisputedly authentic document[s] that a defendant attaches as . . . exhibit[s] to a motion to dismiss if the plaintiff's claims are based on the document' when ruling on a 12(b)(6) motion." *Bostic v. AT&T of V.I.*, 166 F. Supp. 2d 350, 354 (D.V.I. 2001) (alteration in original) (quoting *Pension Benefit Guar. Corp. v. White*, 998 F.3d 1192, 1196–97 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994)).

## II. Motion to Amend Complaint

After amending as of right, a plaintiff may further amend its pleading with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). The court should freely give leave when justice so requires. *Id.* The district court may exercise its discretion to deny leave to amend the complaint, but it must provide a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Furthermore, the court may, upon motion, permit a party to serve a supplemental pleading based on a transaction or occurrence that happened after the date of the original pleading, even if the original pleading is defective. Fed. R. Civ. P. 15(d).

## DISCUSSION

## I. Motion to Dismiss

Defendants move the Court to dismiss Plaintiff's Seventh Amended Complaint. Specifically, Defendants move to dismiss Counts 1–3 for Plaintiff's failure to exhaust

administrative remedies, Count 2 under the Federal Tort Claims Act ("FTCA"), and Counts 3–7

for Plaintiff's failure to establish a prima facie case for age discrimination or retaliation. (*See*

*generally* Defs.' Mem., ECF No. 139.)

## A. Failure to Exhaust Administrative Remedies

Defendants argue that Plaintiff failed to contact an EEO Counselor within the appropriate

time following the allegedly discriminatory conduct, but Plaintiff claims that she did timely

follow administrative remedies, and in the alternative, is entitled to equitable tolling because she

was actively misled. (Pl.'s Opp'n at 2–4, ECF No. 143.) Under the ADEA,

> Aggrieved persons who believe they have been discriminated against on the basis
> of race, color, religion, sex, national origin, age, disability, or genetic information
> must consult a Counselor prior to filing a complaint . . . . within 45 days of the
> date of the matter alleged to be discriminatory or, in the case of personnel action,
> within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a), (a)(1). Effectively an affirmative defense, *see Williams v. Runyon*, 130

F.3d 568, 573 (3d Cir. 1997), the failure to exhaust this administrative procedure and remedial

process "is typically fatal to a civil claim," *Green v. Postmaster Gen. of the U.S.*, 437 F. App'x

174, 177 (3d Cir. 2011) (per curiam); *accord Winder v. Postmaster Gen.*, 528 F. App'x 253, 255

(3d Cir. 2013) ("This 45-day time limit operates akin to a statute of limitations: a claim brought

more than 45 days after the date it accrued will be barred.").

### 1. *Timely Filing from Point of Injury*

The 45-day clock begins to run at the time of the discriminatory conduct or awareness of

actual injury, "not upon awareness that this injury constitutes a legal wrong." *Winder*, 528 F.

App'x at 255 (internal quotations and citations omitted) (finding the plaintiff's injury occurred

when she was informed that she would not be selected for a position, not when another person

filled said position); *Abramsen v. Vilsack*, 2012 WL 4717895, at *7 (D.V.I. Oct. 4, 2012) ("In the

case of discrimination, the time begins to run when the victim knows that the discriminatory act

occurred, not 'the date the victim first perceived that a discriminatory motive caused the act.'"
(quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 2001)))
(finding injury occurred when plaintiffs became aware of eligibility for appointments they were
not offered).

Plaintiff opposes, arguing that she timely followed administrative procedures within 45-
days of the final resolution of her tenure denial and appeal—which encompasses the
discrimination pled in Counts 1 and 3. (Pl.'s Opp'n at 2.) The crucial inquiry is when Plaintiff
can claim she suffered an injury from Defendants' allegedly discriminatory conduct. Plaintiff
assumes that the denial of tenure is the point of injury, but that argument does not stand up to the
precedent in this Circuit. Plaintiff's focus on when the CTB relied on discriminatory reports (*id.*)
looks to the timing of legal injury or the point at which she realized there may have been
discriminatory motive underlying past conduct. Moreover, Counts 1 and 3, despite Plaintiff's
current framing, detail specific discriminatory conduct not by the CTB in denying tenure, but by
her Embassy Caracas supervisors that occurred much earlier. While Count 1 is styled as
"Discriminatory Denial of Tenure," it pleads that Cohan and Rumbarger allegedly discriminated
based on age and gender, treated her differently with respect to her 214(b) application, subjected
her to higher scrutiny, disabled her computer system access, failed to give her adequate VLA
training, and changed her duties. (*See id.* ¶¶ 79–114.) She specifically alleges that she was
passed-over for the immigrant visa and fraud prevention unit rotation in favor of a younger male
officer. (*Id.* ¶ 108.) Count 3, styled as "Discriminatory Animus Proximately Causing Tenure
Denial," pleads that Franz allegedly failed to provide Plaintiff training until the visas Plaintiff
issued violated VLA policy, treated Plaintiff differently than older male colleagues, issued false
VLA Panel findings, and enforced a disciplinary suspension. (*See id.* ¶¶ 199–213.)

Additionally, Plaintiff's complaint to the Office of Civil Rights details the alleged discriminatory acts for investigation, including:

> Denial of the opportunity to rotate into the Immigrant Visa (IV) section; . . . [d]enial of the opportunity to rotate in the Fraud Prevention Unit (FPU); . . . [d]enial of access to the computer network; . . . [m]anagement routinization of Beberman's work more than the work of her colleagues.

(*Id.* ¶ 43.) These alleged acts, and those enumerated within Counts 1 and 3 of Plaintiff's Seventh Amended Complaint, constitute Plaintiff's actual injury—causing the clock to begin to run years before she was denied tenure. The Court cannot conclude that Plaintiff felt no injury or had no sense of the wrongful nature of the conduct and treatment she describes with great specificity at time it occurred.

## 2. *Equitable Tolling*

The 45-day time period may be subject to equitable tolling. *See Green*, 437 F. App'x at 178. In order to invoke equitable tolling, a plaintiff must show that she could not have discovered the essential information for her claim through the exercise of reasonable diligence. *Winder*, 528 F. App'x at 256 (quoting *Ruhel v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007)). Courts in this Circuit look to three particular circumstances that justify equitable tolling: "where a defendant has 'actively misled' a plaintiff regarding her rights; where a plaintiff 'in some extraordinary way has been prevented from asserting' her rights; or where a plaintiff has timely asserted her rights mistakenly in the wrong forum." *Killingworth v. Potter*, 307 F. App'x 685, 688 (3d Cir. 2009) (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1021–22 (3d Cir. 1997)). Equitable tolling "should be applied 'only sparingly.'" *Winder*, 528 F. App'x at 256 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). In the context of employment discrimination, a plaintiff faces a high burden and must show "*both* that [the defendant] actively misled him about the reason for his discharge, and that this deception *caused* the late filing."

9

*Ruehl*, 500 F.3d at 385 (emphasis in original); *see also Hedges v. United States*, 404 F.3d 744, 752 (finding that where plaintiff followed the government's advice to pursue administrative claim, defendant had not actively misled him). In other words, "the employer's own acts or omissions . . . lulled the plaintiff into foregoing prompt attempts to vindicate his [or her] rights." *Oshiver*, 38 F.3d at 1387 (internal citations and quotations omitted). ADEA regulations codify the same bases for equitable tolling of the statute of limitations. *See* 29 C.F.R. § 1614.105(a)(2) ("The agency or the Commission shall extend the 45-day time limit . . . when the individual shows . . . that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.").

        In the alternative, Plaintiff argues that she is entitled to equitable tolling for the discrimination and retaliation claims in Counts 1 and 3 because Defendants actively misled her with respect to the rationale for her reassignment from Embassy Caracas. (Pl.'s Opp'n at 3–4.) She claims that "she did not recognize she was being discriminated against as an older woman when she was scrutinized and re-assigned to Washington until she received an email on May 14, 2013" from Joyce Brooks discussing similar conduct (*id.* at 4; Beberman Decl. ¶¶ 20–24), but then timely contacted the EEO within 45 days of receiving that email (Pl.'s Opp'n at 6–7). Plaintiff also claims she "did not know or expect," "nor did she realize that she had suffered a further injury by not serving such rotations, until she learned in late June or early July 2013, that the Department had assigned her rotations to a younger employee." (*Id.*)[2]

---

[2] Plaintiff also "objects to the Court taking judicial notice of the EEO Counselor's Report and its contents, because it is not an 'adjudicative fact' and is subject to reasonable dispute" pursuant to Federal Rule of Evidence 201. (*Id.* at 5.) At the motion to dismiss stage, a court may consider

Plaintiff provides no concrete evidence that she was actively misled or that Defendants' conduct directly caused her late filing. She simply asserts the representations and justification for transfer from her supervisors at Embassy Caracas obscured the true discriminatory nature of her reassignment (*Id.* at 6), and that she believed her supervisors' claims that her low refusal rates were the reason for this treatment (*see* Beberman Decl. ¶¶ 8–14, ECF No. 143-5). In *Winder*, the plaintiff similarly asserted that "the limitations period should be equitably tolled because [the defendant] actively misled her by 'provid[ing] her with a false and misleading reason for her non-hire'—that she lacked 'supervisory experience.'" 528 F. App'x at 256. Analogous to the facts of that case, Plaintiff's Seventh Amended Complaint contradicts her assertions insofar as she specifically pleads that younger male colleagues were selected for positions instead of her, and at Embassy Caracas, Cohan demonstrated his "discriminatory animus," through enumerated remarks and demeaning conduct. (Seventh Am. Compl. ¶¶ 110–15. *But see* Beberman Decl. ¶ 40 ("Although Cohan had publicly humiliated me and disparaged me for being an engineer, he never made any directly discriminatory statements.").) Like in *Winder*, and as discussed above, Plaintiff's own pleadings belie her tolling argument, as she knew or should have known of her injury. *See Winder*, 528 F. App'x at 256 (finding plaintiff complained of discriminatory conduct earlier, was aware that other applicants were being considered and interviewed, and therefore, did not act "with a reasonably prudent regard for his

public records or authentic documents attached by the defendant as exhibits, where they have been relied on by the plaintiff in support of his or her claims. *See Bostic*, 166 F. Supp. at 354. Despite Plaintiff's characterization, the Court's consideration of this EEO Report document is not notice of an adjudicative fact, but rather review of a document directly related to Plaintiff's claims and whether she exhausted her administrative procedures. Moreover, Plaintiff herself asserts that the contents of the report are not contrary to the claims in her opposition and Complaint, and upon its own review, the Court agrees. (Pl.'s Opp'n at 6; *see* EEO's Counselor Report, ECF No. 139-1.)

or her rights" (quoting *Oshiver*, 38 F.3d at 1389)). Accordingly, Counts 1 and 3 are not subject
to equitable tolling and are dismissed for Plaintiff's failure to timely exhaust administrative
remedies.

### B. FTCA Exception

Defendants argue that Count 2 must be dismissed under the Foreign Country Exception
to the FTCA. (Defs.' Mem. at 11–12.) The Federal Tort Claims Act ("FTCA") revokes
sovereign immunity and provides a cause of action for individuals suing the federal government
with claims grounded in tort. *See* 28 U.S.C. § 1346(b)(1). The FTCA, however, has a "Foreign
Country Exception," which prevents individuals from suing the government for torts committed
outside of the United States. *Id.* § 2680(k) ("The provisions of this chapter and section 1346(b)
of this title shall not apply to . . . [a]ny claim arising in a foreign country."). This provision
extends to torts committed at American military bases and embassies abroad. *See Heller v.
United States*, 776 F.2d 92, 96 (3d Cir. 1985); *Galvin v. United States*, 859 F.3d 71, 73 (D.C. Cir.
2017) (citing *Macharia v. United States*, F. Supp. 2d 13, 27 (D.D.C. 2002)); *see also Rodriguez
v. United States*, 2009 WL 1173938, at *7 (W.D. Wash. Apr. 28, 2009) ("The Supreme Court has
explained that 'the FTCA's foreign country exception bars all claims based on any injury
suffered in a foreign country, regardless of where the tortious act or omission occurred.'"
(quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004))).

Plaintiff does not seem to challenge whether the Foreign Country Exception applies to
the alleged intentional torts committed against her while working at foreign embassies. Rather
she defends on the grounds that the Basic Authorities Act overcomes this exception, authorizing
the Secretary of State to handle tort claims abroad pursuant to certain due process requirements.
(*See* Pl.'s Opp'n at 8–9.) The Basic Authorities Act provides that the head of the agency may

12

ascertain and settle claims for damages "caused by the negligent or wrongful act or omission of any employee of the agency while acting within the scope of his office or employment . . . if a private person, would be liable to the claimant." 28 U.S.C. § 2672. One notable case interpreted the Basic Authorities Act as an exception to the Foreign Country Exception, finding that a tort claimant from an incident arising abroad "is *entitled,* under the Regulations, to have the claim investigated and to have a recommendation regarding the validity of the claim forwarded to the official who will decide whether to pay the claim." *Tarpeh-Doe v. United States*, 904 F.2d 719, 723 (D.C. Cir. 1990) (finding Basic Authorities Act required Secretary of State to review negligence claim against State Department for treatment of a newborn of an international development intern in the Monrovia Embassy). Yet, *Tarpeh-Doe* has had limited subsequent application. One court cited *Tarpeh-Doe* favorably, as an expression of the procedural safeguards required when the State Department handles foreign tort claims, *see MacCaskill v. United States*, 834 F. Supp. 14, 18 (D.D.C. 1993), but another court has declined to follow *Tarpeh-Doe*, finding that there must be consistent practice to secure the benefits of the Basic Authorities Act, *see Murphy ex rel. Estate of Payne v. United States*, 340 F. Supp. 2d 160, 181 (D. Conn. 2004). Others seem to have ignored its instruction. *See Galvin*, 589 F.3d at 73 (applying FTCA Foreign Country Exception to bar tort claims, post-*Tarpeh-Doe*).

Plaintiff's Count 2, "Tort Claim Against the United States," is essentially an intentional infliction of emotional distress claim, thereby invoking the FTCA. (*See* Count 2, Seventh Am. Compl.) However, she pleads tortious conduct by Cohan, her supervisor at the Embassy in Caracas, Venezuela (*see id.* ¶ 182–92)—thereby invoking the Foreign Country Exception and barring Count 2. The issue is whether the doctrine set-forth in *Tarpeh-Doe* provides an *exception to the exception*, which required the Secretary of State to afford Plaintiff some

13

administrative due process to investigate and settle her tort claim. Although raised in opposition to Defendants' Motion to Dismiss, Plaintiff does not plead the administrative procedure or due process requirements in her Seventh Amended Complaint. As it stands, therefore, Count 2 is dismissed. Whether Plaintiff should be able to amend Count 2 to raise *Tarpeh-Doe* will be addressed in detail below. *See infra* section II.

## C. Age Discrimination and Retaliation Claims

Defendants argue that Counts 3 through 7 should be dismissed for Plaintiff's failure to state a proper age discrimination claim. The ADEA prohibits discrimination with respect to "compensation, terms, conditions or privileges of employment," based on an employee's age. 29 U.S.C. § 623(a). It is also unlawful for an employer to retaliate "against an employee for either 'oppos[ing] any practice' made unlawful by their respective provisions or for participating 'in any manner' in an investigation, proceeding, or hearing under their respective provisions." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 191, 192 (3d Cir. 2015) (quoting 29 U.S.C. § 623(d)).

The *McDonnell Douglas* burden-shifting framework applies to these retaliation and discrimination claims. *See Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005). To survive a motion to dismiss, a plaintiff's prima facie case for discrimination under the ADEA must show "(1) she is forty years of age or older; (2) she is qualified for the position in question; (3) she was not selected for the position; and (4) circumstances giving rise to an inference of discrimination accompanied the failure to hire." *Cauler v. Lehigh Valley Hosp., Inc.*, 654 F. App'x 69, 72 (3d Cir. 2016). A prima facie case for retaliation requires a plaintiff to prove: "(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Daniels*, 776 F.3d at 193

14

(internal citations and quotations omitted) (alteration in original). At this stage, the plaintiff need only allege a prima facie case, which carries a minimal burden. *Mull v. PNC Bank, N.A.*, 2014 WL 1248155, at \*7 (W.D. Pa. Mar. 26, 2014).[3]

Plaintiff pleads a myriad of discrimination and retaliation claims in Counts 3 through 7. Defendants take issue with different elements on each Count, but the arguments focus on Plaintiff's failure to establish that age was a motivating factor, that she suffered adverse action, or that there was a causal connection.

*Count 3 Discriminatory Animus Proximately Causing Denial of Tenure.* Plaintiff alleges that Franz mistreated and discriminated against her, referred her to a panel for her VLA violations, improperly involved himself with said panel, did not respond to her justifications, and caused her to suffer a one-day disciplinary suspension—subsequently causing her to lose her tenure opportunity. (*See id.* ¶¶ 199, 202–13.) She compares Franz's treatment of herself with his treatment of Elliot. (*Id.* ¶¶ 203–05.) Defendants argue that this claim fails because Plaintiff does not establish age was the reason for the adverse action against her. (Defs.' Mem. at 13.)

The Court has already found that Count 3 is barred for failure to timely exhaust administrative remedies, but for comprehensiveness, addresses and agrees with Defendants' arguments. While Plaintiff repeats and realleges all previous allegations in the Complaint (*see* Seventh Am. Compl. ¶ 195), Count 3 makes no claim that Franz acted discriminatorily on the basis of Plaintiff's age. Moreover, the comparison of herself and Elliot, and the procedure following Elliot's VLA violation, does not give rise to an inference or presumption of age

---

[3] The prima facie case required for all federal discrimination claims is essentially identical, *see Rajbahadoorsingh v. Chase Manhattan Bank, N.A.*, 168 F. Supp. 2d 496, 500 (D.V.I. 2000); therefore, the law applied below comes from various employment discrimination contexts, where the same criteria of materially adverse employment action, causal connection, etc. are at issue.

discrimination. While a comparator need not be part of an unprotected class of persons, he should still be "sufficiently younger" to infer discrimination. *Simpson v. Kay Jewelers*, 142 F.3d 639, 650 (3d Cir. 1998); *see Cauler*, 654 F. App'x at 72 (finding reference to "substantially younger" colleague was a legal conclusion without facts on which to infer discrimination). Here, Elliot is described as an "older male colleague." (*See, e.g.*, Seventh Am. Compl. ¶ 251.) Even assuming *arguendo* he is relevant, Plaintiff cannot "selectively choose a comparator" for the court to "view in a vacuum" and possibly "ignore a significant group of comparators who were treated equally or less favorably than she." *Simpson*, 142 F.3d at 647.[4]

Finally, although Plaintiff claims Franz's conduct proximately caused her denial of tenure, the Court cannot make this logical leap. *See Morrison v. Carpenter Tech. Corp.*, 193 F. App'x 148, 154 (3d Cir. 2006) ("The review did not result in any economic loss to Morrison or any change to the terms of his employment, and the record is devoid of any facts bearing upon the significance of the single corrective performance review on his professional advancement at Carpenter."). Accordingly, Count 3 is dismissed both for Plaintiff's failure to exhaust remedies

---

[4] In opposition, Plaintiff claims that she appropriately compares herself to Elliot: "Beberman's claim is viable even though certain members of the class of older workers—older males—were not subject to discrimination, because Beberman's subset, older women, was discriminated against based on the protected characteristics that the older men and older women share—their age." (Pl.'s Opp'n at 16.) The Court cannot accept this argument since Plaintiff has already withdrawn her Title VII gender discrimination claims and only advances ADEA claims in this litigation. (*See* Op. at 2, ECF No. 129.) While it may be true that certain members of a protected class or sub-sets of the class are treated differently, this conjecture still does not support Plaintiff's argument or withstand the Third Circuit's approach to comparators discussed in *Simpson*. Plaintiff also argues that some email correspondence between Elliot and Plaintiff attached to Defendants' Motions asks the Court to improperly take judicial notice of the contents of said email as adjudicative facts. (Pl.'s Opp'n at 20.) As discussed above, *see supra* note 2, this argument is unavailing as Plaintiff herself relies on Elliot in her pleadings. And for this particular issue, the Court has already concluded that he is an improper comparator that does not support Plaintiff's discrimination claims. Accordingly, the Court need not rely on the emails, and the argument is moot.

and failure to state a claim.

*Count 4 Retaliatory And Discriminatory Denial Of Opportunity To Serve As Backup Consular Officer Causing Harm, Including Proximately Causing Tenure Denial.* Plaintiff alleges that she was discriminatorily and retaliatory denied an opportunity to serve as a backup consular officer at Embassy Malabo, after the Bureau of Consular Affairs allegedly received unfavorable communications regarding her pending mediation and litigation with the State Department. (*See* Seventh Am. Compl. ¶¶ 217–24.) She also claims that this retaliatory denial of the backup role chilled her participation in ADEA challenges and mediation. (*Id.* ¶¶ 226–29.) Defendants argue that Plaintiff's claim fails under the Rule 12(b)(6) standard because Plaintiff does not establish a causal connection between her age and the allegedly adverse action, nor demonstrate that this denial was adverse. (Defs.' Mem. at 14–15.)

Once again, with respect to the causal connection element, Plaintiff does not demonstrate that her age was the reason she was denied this opportunity. However, Count 4 is also framed as a retaliation claim borne out of Plaintiff's EEO complaints. Therefore she may meet the 12(b)(6) standard if the actions pled were adverse.

An adverse employment action involves change to the compensation, terms, conditions, or privileges of employment, including "hiring, firing, failing to promote, reassignment or a decision causing a significant change in benefits." *Sherrod v. Phila. Gas Works*, 57 F. App'x 68, 73 (3d Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *Reed v. V.I. Water & Power Auth.*, 2018 WL 1598660, at *4 (D.V.I. Mar. 30, 2018). While the Court should make inferences in Plaintiff's favor at this stage of litigation, *see Fowler*, 578 F.3d at 210–11, it is neither the Court's responsibility nor obligation to assume and speculate facts in support of Plaintiff's claims, *see Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) ("For

any alleged harms to be materially adverse, however, they must not be 'unduly speculative.'"
(quoting *Douglas v. Donovan*, 559 F.3d 549, 553 (D.C. Cir. 2009))). It is plausible that special
employment opportunities have a positive reflection on the employee in a review process such as
the CTB, and thus denial could likewise reflect poorly. Plaintiff, however, does not provide any
information as to the duties and responsibilities of or selection process for a backup consular
officer in order to assess the effect of the denial on her employment record. Therefore, Count 4
must be dismissed for Plaintiff's failure to plead both discrimination and retaliation.

*Count 5 Retaliatory and Discriminatory Transfer Due to Ambassador Misconduct.*

Plaintiff pleads that her separation order was issued in discrimination and retaliation because
Furuta-Toy was briefed about Plaintiff's history from other allegedly biased individuals. (*See*
Seventh Am. Compl. ¶¶ 240–48.) Again, Defendants argue that Plaintiff's claim is "baseless"
because there is no adverse action pled and because Plaintiff strings together an "attenuated"
chain of biased supervisors. (Defs.' Mem. at 15.)

Plaintiff describes the adverse action as sending her back to Washington rather than
keeping her at her embassy post in Malabo during her FGSB grievance and appeal. Without any
concrete facts to conclude that this was a "reduction in pay or status," it appears to be more
appropriately described as a transfer in location from a foreign post back to the United States.
*See Scott v. New Jersey*, 143 F. App'x 443, 446 (3d Cir. 2005) (finding no adverse action where
transfer order sent two employees to different correctional facilities with qualification they
remain on same shift with same off time).

Changes in duties or responsibilities, even demotions, are not necessarily adverse. *See,
e.g.*, *McKinnon v. Gonzales*, 642 F. Supp. 2d 410, 435 (D.N.J. 2009) ("Minor changes in duties
or working conditions, even unpalatable or unwelcome ones, which cause no materially

18

significant disadvantage do not satisfy the prong." (internal citations omitted)); *Langley v. Merck & Co., Inc.*, 2005 WL 1279108, at \*3 (E.D. Pa. May 25, 2005) (finding although responsibilities differed, plaintiff's new grade and pay level did not change, and despite claims that it was adverse, she still had advancement opportunities). However, Plaintiff asserts that she lost a number of benefits (Pl.'s Opp'n at 14; Seventh Am. Compl. ¶¶ 279–80) and that her duties in Washington "constitute qualitatively inferior work requiring less skill and knowledge" (Pl.'s Opp'n at 12–13). *See Jones v. Sch. Dist. Phila.*, 198 F.3d 403, 412 (3d Cir. 2005) (finding adverse a transfer to a notoriously difficult school with less desirable roster and inability to teach preferred courses). Construing these assertions in Plaintiff's favor (*see* Pl.'s Opp'n at 13 ("[R]eassignment from a supervisory to a non-supervisory position, from a mid-level to an entry-level position, from a front-line . . . diplomat to a Washington bureaucrat, was an adverse action[.]")), the Court finds that this combination of change to duties, location, and benefits sufficiently pleads adverse employment action which should be adjudicated at summary judgment or by a trier of fact. *But see Berridge v. Nalco Co.*, 2014 WL 340596, at \*9 (D.N.J. Jan. 30, 2014) ("Plaintiff offers nothing more than purely speculative assessments about his commissions and subjective preferences for location in support of his argument that the transfer in this case was materially adverse to his employment.").

On the other hand, there is no clear causal link between the potential age discrimination by biased supervisors and the subsequent separation order to support a discrimination claim. *See Ponton v. AFSCME*, 395 F. App'x 867, 874 (3d Cir. 2010). Therefore, only Plaintiff's retaliation claim in Count 5 survives the Motion to Dismiss.

*Count 6 Retaliatory and Discriminatory Transfer.* In Count 6, Plaintiff once again claims that the separation order requiring her to leave Embassy Malabo after she was denied tenure was

retaliatory and discriminatory as compared to Elliot, the allegedly similarly situated, older male colleague. (*See* Seventh Am. Compl. ¶¶ 252–55.) Defendants argue that this allegation again fails because she compares herself to an older male, with unique circumstances and no comparative merit. (*See* Defs.' Mem. at 17.) Defendants also claim that Plaintiff fails to establish her separation order was in retaliation for her EEO conduct. (*Id.*)

Plaintiff's Count 6 is essentially the same claim found in Count 5, making use of Elliot as a comparator. The Court has already discussed both issues. First, Plaintiff meets her Rule 12(b)(6) burden with respect to the claim that the separation order and transfer to Washington was retaliatory. Second, the use of Elliot as a comparator does not imply age discrimination. Elliot is not similarly situated: he was stationed in Saudi Arabia, and therefore there is no way to conclude that "the two employers dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Kearns v. Bristol Twp.*, 2015 WL 3622879, at *5 (E.D. Pa. June 15, 2010) (quoting *Opstantik v. Norfold S. Corp.*, 335 F. App'x 220, 222–23 (3d Cir. 2009)). Nor can the Court find that this attenuated treatment of one other employee "give[s] rise to an inference of causation when considered as a whole." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007). Therefore, the retaliation, but not discrimination, claim within Count 6 survives a motion to dismiss.

*Count 7 Retaliatory Failure To Make Tenure and Promotion Recommendation.* Finally, Count 7 pleads that Furuta-Toy and Zabriskie refused to articulate a tenure recommendation in retaliation for Plaintiff's preliminary injunction application in federal court, among other settlement and mediation conduct. (*See* Seventh Am. Compl. ¶¶ 267–71.) Defendants argue that this does not plead adverse action because Furuta-Toy and Zabriskie also gave Plaintiff positive

ratings and performance reviews. (Defs.' Mem. at 18 (quoting Seventh Am. Compl. ¶ 264).)

Although it is plausible the review board could call into question the positive ratings as compared to the lack of recommendation, the Court cannot accept Plaintiff's inference. Negative reviews can certainly affect future advancement and promotion opportunities. *See Bostic*, 166 F. Supp. at 363. Although Zabriskie and Furuta-Toy *declined* to articulate a recommendation, the EER had *positive* reviews and "checked the box that indicated that, in her assessment, Beberman should be tenured." (Seventh Am. Compl. ¶¶ 263–66.) Plaintiff attempts to claim that this type of inaction can rise to the level of discriminatory conduct and intent (Pl.'s Opp'n at 13), however, the cases on which she relies are unsuitable to the facts here, *see, e.g.*, *Locke v. Haessig*, 788 F.3d 662, 671 (7th Cir. 2015) (discussing inaction in the form of a supervisor ignoring complaints from one group of employees but acting on those of another). With all claims of adverse employment action, "context matters," and the narrative presented does not permit the Court to infer that the failure to recommend or nominate her, coupled with positive evaluations, was materially adverse. *Bridgeforth*, 721 F.3d at 665; *see also Ponton*, 395 F. App'x at 874 (finding employee review was not adverse where it had highest possible rating of satisfactory coupled with some notes that plaintiff refused to follow directions). Thus, Count 7 is dismissed.

## II.    Motion to Amend

Plaintiff has moved to amend with an Eighth Proposed Amended Complaint. Defendants' reply to Plaintiff's opposition to their Motion to Dismiss raised the procedural requirements for tort claims brought pursuant to the FTCA under *Tarpeh-Doe*. Per her own admission, this prompted Plaintiff's Motion to Amend to correct deficiencies in her complaint and recast Count 2. (Pl.'s Mot. Am. at 2, ECF No. 145 (citing Defs.' Mem. at 3–4, ECF No.

144).) Plaintiff seeks to amend Count 2 of her Seventh Amended Complaint with allegations that she did not receive the due process owed to her under the Basic Authorities Act and FTCA exceptions when she filed her EEO complaints. Defendants argue that they will be unduly prejudiced by this amendment, Plaintiff had ample opportunity to amend earlier, and amendment is futile because the Act doesn't apply and therefore will not survive a motion to dismiss. (*See generally* Defs.' Opp'n, ECF No. 146.)

Plaintiff claims that she has advanced this Basic Authorities Act argument before. (Pl.'s Reply at 2, ECF No. 148 (quoting Pl.'s Reply in Support of Motion to File Sixth Am. Compl. at 13–14, ECF No. 122).) She did not, however, view Count 2 in the context of an administrative process until Defendants' most recent reply brief on their Motion to Dismiss. (*Id.*) Accordingly, she claims that amendment poses no prejudice because Defendants were on notice and no undue delay because she timely moved to amend just two days after Defendants filed their reply brief. (*Id.* at 3.) This framing of prejudice and undue delay with respect to Rule 15 is inapposite. Plaintiff, represented by counsel, cannot rely on Defendants to help her "grasp[] the deficiencies" in her own pleadings. (*Id.*) And in the context of the life of this case writ large, Plaintiff could have amended sooner if she had already relied on the Basic Authorities Act in her reply brief on June 7, 2017. (*See* ECF No. 122.) For these reasons, Plaintiff's Motion to Amend is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiff's Motion to Amend is denied. A corresponding order will follow.

Date: 4/26/18

ANNE E. THOMPSON, U.S.D.J.

22