**UNITED STATES DISTRICT COURT**
**DISTRICT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

JULIE A. BEBERMAN,

                    Plaintiff,

          v.                                              Civ. No. 14-20

U.S. DEPARTMENT OF STATE and                    **OPINION**
SECRETARY OF STATE MICHAEL R.
POMPEO, in his official capacity,

                    Defendants.

THOMPSON, U.S.D.J.[1]

# INTRODUCTION

This matter comes before the Court upon the Motion for Summary Judgment by

Defendants U.S. Department of State ("State Department") and Secretary of State Michael R.

Pompeo, in his official capacity (collectively, "Defendants"). (ECF No. 218.) Plaintiff Julie A.

Beberman ("Plaintiff") opposes. (ECF No. 228.) For the reasons stated herein, Defendants'

Motion for Summary Judgment is granted.

# BACKGROUND

## I.     Factual Background

This is an employment retaliation case under the Age Discrimination in Employment Act

of 1967. It arises out of Plaintiff's claims that Defendant State Department retaliated against her

in response to civil actions and grievances filed by Plaintiff against Defendant State Department.

---

[1] The Honorable Anne E. Thompson, United States District Judge for the District of New Jersey,
sitting by designation.

(7th Am. Compl. ¶¶ 239–56, ECF No. 137.) Plaintiff took her oath of office as a Foreign Service

Officer on January 19, 2010. (Pl.'s Response to SUMF ¶ 1, ECF No. 229.) Her appointment was

limited to a term of five years, unless she "qualif[ied] for conversion to career status, based on

the recommendation of [Defendant State Department's] Commissioning and Tenure Board."

(Defs.' SUMF ¶ 3, ECF No. 219 (citing Offer of Appointment at 4, Defs.' Ex. 2, ECF No. 219-

1).)[2] Foreign Service Officers who are granted tenure during this period are recommended to the

President of the United States for career appointments. (*Id.* ¶ 6 (citing 22 U.S.C. § 3946(a)).)

Foreign Service Officers who are not recommended for tenure are separated from the Foreign

Service (*id.* ¶ 8), unless Defendant State Department's Foreign Service Grievance Board

("FSGB") grants such Officers interim relief from separation (Pl.'s Response to SUMF ¶ 8).

Plaintiff filed at least eight grievances before the FSGB between 2015 and 2018. (Defs.'

SUMF ¶ 54.) Plaintiff also filed at least seven civil actions between 2014 and 2019. (*Id.* ¶ 53.)

John Elliott, a Foreign Service Officer who was denied tenure at the same time as Plaintiff yet

remained in his overseas assignment in Saudi Arabia afterward, had not filed any EEO actions as

of the time of his denial of tenure. (Pl.'s CSOF ¶ 16, ECF No. 230 (citing Elliott Decl., Pl.'s Ex.

45, ECF No. 235-5).)

When Ambassador Julie Furuta-Toy was first appointed as U.S. Ambassador to Equatorial

Guinea, the Bureau of Consular Affairs provided her with a briefing regarding her new post.

(Defs.' SUMF ¶ 56 (citing Furuta-Toy Dep. 14:3–5; 15:21, 16:1, Defs.' Ex. 20, ECF No. 219-

2).) Defendants argue that, during Ambassador Furuta-Toy's meeting with the Bureau of

Consular Affairs, "[n]o one discussed Plaintiff's [equal opportunity employment] activities,"

---

[2] Because Defendants combined their exhibits into two documents, when referring to
Defendants' exhibits, this Opinion cites the page numbers of Defendants' submitted portable
document format ("PDF") files.

including the present action and Plaintiff's other grievances against Defendant State Department; instead, the briefing's attendees discussed staffing at Embassy Malabo and Plaintiff's inability to serve as a backup consular officer. (Defs.' SUMF ¶ 59.) Plaintiff argues that a portion of the briefing checklist is redacted and that Plaintiff has no way of knowing whether the redactions contain information about her grievances. (Pl.'s Response to SUMF ¶ 57.) Plaintiff also contends that the deposition testimony of Ambassador Furuta-Toy and Principal Deputy Assistant Secretary ("PDAS") of the Bureau of Consular Affairs David Donahue—offered by Defendants to show that Plaintiff's grievances were not a topic of discussion during the briefing—is not credible or plausible. (*Id.* ¶ 59.)

Before Plaintiff was denied tenure, Plaintiff petitioned Ambassador Furuta-Toy and the Deputy Chief of Mission at Embassy Malabo, Petra Zabriskie ("DCM Zabriskie"), to request that Plaintiff remain at Embassy Malabo if she was denied tenure. (Defs.' SUMF ¶ 26 (citing Beberman Dep. 43:6–17, Defs.' Ex. 5, ECF No. 219-1).) Plaintiff's Career Development Officer notified Plaintiff that she would have to return to Washington, D.C., if she was not recommended for tenure. (*Id.* ¶ 28.) Plaintiff was denied tenure by the Winter 2015 Commissioning and Tenure Board on March 11, 2016. (Defs.' SUMF ¶ 12 (citing Defs.' Ex. 10, ECF No. 219-1).) At that time, she was serving at Embassy Malabo, where she had been since 2014. (*Id.* ¶ 16.) Accordingly, Plaintiff was scheduled to be separated from the Foreign Service at the end of her limited appointment. (*Id.* ¶ 13 (citing Beberman Dep. 8:15–18).) Defendant State Department notified Plaintiff that she would be transferred to Washington, D.C., while on interim relief. (Pl.'s Response to SUMF ¶ 19.)

Following her denial of tenure, Plaintiff asked Ambassador Furuta-Toy and DCM Zabriskie to request that the Director General ("DG") allow Plaintiff to remain at Embassy

Malabo. (Defs.' SUMF ¶ 29 (citing Defs.' Ex. 16, ECF No. 219-2).) In this correspondence,

Plaintiff noted that the decision whether to keep her at her post "[was] discretionary and [that]

either Washington or [the Ambassador] [could] exclude [Plaintiff] from specific functions or find

that it is essential to the functioning of the post to have [Plaintiff] depart." (*Id.* ¶ 31.) On March

1, 2016, Ambassador Furuta-Toy and DCM Zabriskie notified Plaintiff that the Ambassador did

not intend to request that Plaintiff remain at her post if she was granted interim relief from

separation. (Pl.'s Response to SUMF ¶ 41.) On March 2, 2016, Plaintiff requested that the FSGB

grant Plaintiff interim relief from separation. (Defs.' SUMF ¶ 22.) On March 9, 2016, the FSGB

granted Plaintiff temporary interim relief from separation. (*Id.*; Pl.'s CSOF ¶ 4 (citing Pl.'s Ex. 4,

ECF No. 231-4).)

 Plaintiff was transferred to Washington, D.C., on April 9, 2016. (Pl.'s CSOF ¶ 17.)

Initially, Plaintiff was able to "perform[ ] meaningful work for the International Health and

Biodefense Office of the Bureau of Oceans, International Environmental and Scientific Affairs."

(Defs.' SUMF ¶ 43.) Plaintiff's transfer did not result in any change in grade or step. (*Id.* ¶ 48.)

However, as a result of her transfer, Plaintiff lost her eligibility to participate in the Student Loan

Repayment Program and stopped earning home leave days—annual leave days accrued only

when working overseas. (Pl.'s CSOF ¶¶ 59–60 (citing Pl.'s Ex. 31, ECF No. 234-1; Pl.'s Ex. 3,

ECF No. 231-3).) Plaintiff also lost the benefit she enjoyed at Embassy Malabo of residing in

State Department Housing with no rent or utility expenses. (*Id.* ¶¶ 56–57 (citing Beberman Decl.

¶ 26, Pl.'s Ex. 6, ECF No. 231-6).) Additionally, if Plaintiff had remained at Embassy Malabo,

she would have been "eligible for differentials, allowances, etc., applicable to that specific post."

(SOP D-01 at 56–57, Defs.' Ex. 7, ECF No. 219-1; *see also* Pl.'s CSOF ¶ 54 (indicating that

Plaintiff had been authorized at Embassy Malabo to receive a service-needs differential of fifteen

percent above her salary).) At the time of Plaintiff's transfer, the presidential elections in Equatorial Guinea, which had been central to Plaintiff's work at Embassy Malabo, were imminent. (Zabriskie Dep. 60:21–61:19, Pl.'s Ex. 18, ECF No. 232-8.)

## II.     Procedural History

Plaintiff filed the Complaint on May 9, 2014. (ECF No. 1.) Plaintiff amended the Complaint once as of right on May 22, 2014. (ECF No. 21.) Between December 2014 and May 2017, Plaintiff filed five additional motions to amend the Complaint. (ECF Nos. 46, 53, 98, 103, 109.) Defendants filed two motions to dismiss. (ECF Nos. 92, 110.) On September 1, 2017, this Court granted three of Plaintiff's motions, denied one motion, and granted one motion in part. (ECF No. 130.) The Court granted Plaintiff leave to file a Seventh Amended Complaint (*id.* at 2), which Plaintiff filed on October 16, 2017 (ECF No. 137). In response to Defendants' Motion to Dismiss (ECF No. 138), the Court dismissed Counts 1–4 and 7 of Plaintiff's Seventh Amended Complaint. (ECF Nos. 149, 150.) The Court denied Plaintiff's Motion for Reconsideration of the Court's dismissal of Count 4. (ECF Nos. 241, 242.)

The two remaining counts of the Seventh Amended Complaint, Counts 5 and 6, initially alleged discrimination and retaliation under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* (7th Am. Compl. ¶¶ 239–56.) The Court dismissed Plaintiff's discrimination claims, leaving only Plaintiff's retaliation claims. (Dismissal Op. at 19–20, ECF No. 150.) What remains of Count 5 alleges that Ambassador Futura-Toy retaliated against Plaintiff when she did not request that the DG allow Plaintiff to remain at Embassy Malabo because "[Plaintiff] had engaged in EEO activities, including bringing this action." (7th Am. Compl. ¶ 246.) Plaintiff argues that this retaliation was a result of the "briefing that Consular Affairs had given [Ambassador Furuta-Toy] about Beberman." (*Id.*) Count 6 alleges that,

because of Defendants' retaliation, Plaintiff was treated less favorably than John Elliott. (*See id.* ¶¶ 250–55.)

Defendants filed a Motion for Summary Judgment on July 31, 2019. (ECF No. 218.) Plaintiff opposed. (ECF No. 228.) The Court held oral argument on the Motion on December 10, 2019. (ECF No. 245.) The Motion is presently before the Court.

## LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

At the summary-judgment stage, a district court considers the facts drawn from materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). Summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248–49. Similarly, the Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

The burden-shifting framework in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), applies to ADEA retaliation claims. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). To establish a *prima facie* case of retaliation under the ADEA, a plaintiff must demonstrate "(1) [that the plaintiff engaged in] protected employee activity; (2) [an] adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Id.* Under this framework, "[i]f the plaintiff makes these showings, the burden of production of evidence shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action." *Id.* (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)). "If the employer advances such a reason, the burden shifts back to the plaintiff to demonstrate 'that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Id.* "Although the burden of production of evidence shifts back and forth, the plaintiff has the ultimate burden of persuasion at all times." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). In undergoing this burden-shifting analysis in ADEA retaliation cases, the court may draw upon judicial interpretations of Title VII of the Civil Rights Act of 1964. *See id.* at 192–93 (citing *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013)).

## I.    Protected Employee Activity

In this case, the parties do not dispute that Plaintiff engaged in "protected employee activity" under the ADEA. (*See* Defs.' SUMF ¶ 53; Pl.'s CSOF ¶ 15.) "Protected activities

include . . . an employee's filing of formal charges of discrimination against an employer." *Smith v. N3 Oceanic, Inc.*, 717 F. App'x 162, 165 (3d Cir. 2017). Because of their timing, three of Plaintiff's actions could logically comprise the "EEO activities" that Plaintiff alleges caused Defendants to retaliate against her: (1) the filing of the Complaint in the present case, which initially alleged age and gender discrimination (Compl. ¶¶ 59–86, ECF No. 1); (2) FSGB Case No. 2015-035, which challenged the Employee Evaluation Reports that Plaintiff received in Venezuela and requested interim relief (Defs.' Ex. 25, ECF No. 219-2); and (3) FSGB Case No. 2016-001, which challenged a change in Plaintiff's assignment as a backup consular officer at Embassy Malabo as retaliatory (*id.*). Plaintiff's other civil actions in federal court were filed after March 1, 2016, the date on which Ambassador Furuta-Toy stated she would not request that Plaintiff remain at Embassy Malabo. (*See* Defs.' SUMF ¶ 53; Defs.' Ex. 25.) Later actions or grievances filed by Plaintiff could not have constituted the protected activities that caused the Ambassador's decision.

## II.    Adverse Action

"For an employer's action to satisfy the second prong of a *prima facie* case of retaliation, the plaintiff 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Daniels*, 776 F.3d at 195 (emphasis added) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *cf. Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (stating "that the anti-retaliation provision [of Title VII] . . . is not limited to discriminatory actions that affect the terms and conditions of employment").

Plaintiff viewed her circumstances in Washington, D.C., as less favorable than her

circumstances at Embassy Malabo. For the most part, however, Plaintiff's circumstances in Washington, D.C., were endemic to the location of her post. For example, although Plaintiff was no longer "eligible for differentials, allowances, etc., applicable to [Embassy Malabo]" upon her transfer (SOP D-01 at 56–57; *see also* Pl.'s CSOF ¶ 54 (indicating that Plaintiff had been authorized at Embassy Malabo to receive a service-needs differential of fifteen percent above her salary)), a post differential reflects "conditions of environment which differ substantially from conditions of environment in the continental United States." (Defs.' Reply at 8, ECF No. 240 (citing 5 U.S.C. § 5925(a)).) Furthermore, although Plaintiff no longer resided in Defendant State Department housing free of rent or utility expenses in Washington, D.C., as she did at Embassy Malabo (Pl.'s CSOF ¶¶ 56–57), a cost of living adjustment helps "offset the difference between the cost of living at the post of assignment of the employee in a foreign area and the cost of living in the District of Columbia" (Defs.' Reply at 8 (citing 5 U.S.C. § 5924(a)).

Unfortunately, Plaintiff's denial of tenure and transfer coincided with what she viewed as career-related setbacks. Before being transferred, Plaintiff had served at Embassy Malabo as the Political/Economic Officer with "Commercial Affairs" responsibilities and "backup Public Diplomacy" duties. (*Id.* ¶ 29.) One of Plaintiff's "raters" noted that "[Plaintiff] handle[d] the most demanding portfolio in the Embassy—Political/Economic Officer with commercial advocacy responsibilities." (*Id.* ¶ 35 (citing Pl.'s Ex. 17, ECF No. 232-7).) After her transfer, Plaintiff concedes that she performed "meaningful work" (Pl.'s Response to SUMF ¶ 43), but argues that she only "made partial use of the skills she had developed" in the Bureau of Oceans and International Environmental and Scientific Affairs (Pl.'s CSOF ¶ 42 (citing Pl.'s Ex. 60, ECF No. 236-10; Pl.'s Ex. 61, ECF No. 237-1)). As of September 4, 2018, Plaintiff's role entailed serving on a qualifications panel, working closely with experienced Human Resources

("HR") professionals to increase efficiency, contributing to the HR team by addressing "eligible family member hiring surges," and "whittl[ing] down the awards backlog as interim bureau awards coordinator and institut[ing] tracking improvements." (Pl.'s Ex. 62, ECF No. 237-2.)

The Court must account for these consequences when assessing the nature of Defendants' actions. *Cf. Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152–53 (3d Cir. 1999) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 2268 (1998)) (classifying "reassignment with significantly different responsibilities" as a tangible, adverse employment action). At the same time, the Court must account for ways in which an employer's action may have had positive consequences. Plaintiff's transfer to Washington, D.C., caused her salary to increase and "did not result in any reduction in grade or step." (Defs.' SUMF ¶ 48; Defs.' Br. at 2, ECF No. 220 (citing Collins Decl. ¶ 6, Defs.' Ex. 24, ECF No. 219-2).)[3] Moreover, Plaintiff received a home service transfer allowance upon moving to Washington, D.C. (Collins Decl. ¶ 5.) In considering the consequences of an allegedly adverse action, however, it is critical for a district court to understand and consider the context in which the action arises. *Cf. Cardenas v. Massey*, 269 F.3d 251, 261 (3d Cir. 2001) (focusing on the "overall scenario" when assessing adversity in the Title VII context). When Ambassador Furuta-Toy made the decision not to retain Plaintiff at Embassy Malabo, Plaintiff had already been denied tenure. Under Defendant State Department policy in place at the time, a Foreign Service Officer who is denied tenure and granted interim relief "should be returned to Washington on separation orders to work in a

---

[3] The Court does not base its conclusion regarding the adverse action prong of Plaintiff's *prima facie* case solely on the facts that the Plaintiff's transfer caused her salary to increase and did not result in any reduction in grade or step. Those facts are not dispositive in this Court's assessment of causation. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 411–12 (3d Cir. 2005) (citing *Torre v. Casio, Inc.*, 42 F.3d 825, 831 n.7 (3d Cir. 1994) ("[A] transfer, even without loss of pay or benefits, may, in some circumstances, constitute an adverse job action.")).

domestic assignment in the [Defendant State Department] until the resolution of his/her grievance." (Defs.' Br. at 10 (citing SOP D-01 at 56).) Plaintiff experienced the same consequences that any other employee would experience under an application of Defendant State Department's general rule. Accounting for the context in which Plaintiff's transfer occurred— that is, in conjunction with Plaintiff's denial of tenure—her transfer was not an adverse action.

The fact that not all Foreign Service Officers who are denied tenure are transferred from their posts does not alter this result. To rebut Defendants' argument that the reason for Plaintiff's transfer was that she was denied tenure, Plaintiff points to another Foreign Service Officer, John Elliott, who was denied tenure yet remained at his post. (Pl.'s CSOF ¶¶ 148–49.) However, Plaintiff only provides one material similarity between John Elliott and herself: that they were denied tenure at the same time. (*Id.* ¶ 148.) The differences between the two individuals are starker. When Plaintiff and Elliott were denied tenure, Plaintiff was stationed at Embassy Malabo and supervised by Ambassador Furuta-Toy; Elliott was stationed in Saudi Arabia serving under a different supervisor. (Pl.'s Ex. 13, ECF No. 232-3.) These differences are among the reasons why the Court dismissed Plaintiff's discrimination claims in Count 6. (Dismissal Op. at 20.) For these same reasons, the Court does not find Plaintiff's comparisons to John Elliott instructive in assessing whether Defendant State Department engaged in an adverse action or whether Defendants retaliated against Plaintiff more generally.

## III. Causal Connection

At the summary judgment stage, "a broad array of evidence" is considered when analyzing whether a causal connection exists between a plaintiff's protected activity and a defendant's adverse action. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (citation omitted). "To demonstrate a link between protected activity and an

employer's adverse action, a plaintiff may rely on the temporal proximity between the two if 'unusually suggestive.'" *Daniels*, 776 F.3d at 196; *see also Griesbaum v. Aventis Pharm.*, 259 F. App'x 459, 467 (3d Cir. 2007). "In the absence of such close temporal proximity, [the Court] consider[s] the circumstances as a whole . . . ." *Daniels*, 776 F.3d at 196. Where there does not appear to be any pattern of antagonism by Defendants, *see Griesbaum*, 259 F. App'x at 467, the Court must ask whether the proffered evidence, analyzed as a whole, supports an inference of causation. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279–80 (3d Cir. 2000) (ruling in a Title VII case that the district court committed error by "requiring more than one retaliatory act, or one closer in temporal proximity, or some demonstrative activity, to the exclusion of all other facts or events potentially probative of causation"); *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997) ("The element of causation . . . is highly context-specific."). "Among the kinds of evidence that a plaintiff can proffer are intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." *LeBoon*, 503 F.3d at 232–33.

The temporal proximity between the filing of the present action and Plaintiff's transfer is not "unusually suggestive." Plaintiff filed the present action in 2014. (Pl.'s CSOF ¶ 15.) Plaintiff was denied tenure on March 11, 2016. (Defs.' SUMF ¶ 12 (citing Defs.' Ex. 10).) Plaintiff was transferred to Washington, D.C., on April 9, 2016. (Pl.'s CSOF ¶ 17.) "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity," *LeBoon*, 503 F.3d at 233, the Third Circuit has held that gaps of two months and three months are not unusually suggestive, *cf. Young v. City of Phila. Police Dep't*, 651 F. App'x 90, 98 (3d Cir. 2016) (citing *LeBoon*, 503 F.3d at 233 (three months not unusually suggestive); *Williams v. Phila. Hous. Auth.*

*Police Dep't*, 380 F.3d 751, 759–60 (3d Cir. 2004) (two months not unusually suggestive)). *A fortiori*, this Court cannot infer a causal connection between Plaintiff's filing of the present action and her transfer based on timing alone. Nor can this Court infer a causal connection between Plaintiff's transfer and Plaintiff's filing of FSGB Case No. 2015-035, which was filed in August 2015, solely based on timing. (*See* Defs.' Ex. 25.) Finally, this Court will not infer a causal connection based on the temporal proximity of FSGB Case No. 2016-036, filed almost two months before Ambassador Furuta-Toy stated she would not request that Plaintiff remain at Embassy Malabo, and Plaintiff's transfer.

Nor can the Court conclude that the proffered evidence, analyzed as a whole, supports an inference of causation. First, the language of Defendant State Department's policy favors Defendants' theory as to why Ambassador Furuta-Toy did not request that Plaintiff remain at Embassy Malabo. Defendants argue that Plaintiff was transferred because she had been denied tenure, not because she engaged in protected activity. (Defs.' Br. at 9–13.) Defendants cite the policy of Defendant State Department in place at the time of Plaintiff's transfer, which prescribed that an employee who had been granted interim relief from separation "should be returned to Washington on separation orders to work in a domestic assignment in [Defendant State Department] until the resolution of his/her grievance." (*Id.* at 10 (citing SOP D-01 at 56).) Plaintiff's theory of the case relies on the exception in Defendant State Department's policy, which provides that "[i]n rare circumstances, and based on the needs of the Service, the DG may permit an employee in interim relief status to remain at post if post makes such a request to the DG." (SOP D-01 at 56–57.) Both parties agree that Defendant State Department's decision is discretionary. (*See* Defs.' Br. at 10 (citing Defs.' Ex. 15, ECF No. 219-2); Pl.'s CSOF ¶ 69 (citing Pl.'s Ex. 9, ECF No. 231-9).) However, this discretion is not standardless; the policy itself

prescribes application of the exception only in "rare circumstances."

Second, the comments made by Ambassador Furuta-Toy and relied upon by Plaintiff do not support an inference of causation. To support Plaintiff's argument that Defendants' reason for her transfer was that she engaged in EEO activities, Plaintiff points to Ambassador Furuta-Toy's deposition, in which the Ambassador stated that she "might have" "told [DCM Zabriskie] that one of the reasons that [Ambassador Furuta-Toy] thought [Plaintiff] should not remain at post after denial of tenure was that she should go and work on her grievances." (Furuta-Toy Dep. 39:16–20, Pl.'s Ex. 7, ECF No. 231-7.) Ambassador Furuta-Toy also stated that she had a conversation with DCM Zabriskie about Plaintiff and her grievances "[o]nce the tenure decision had been made." (*Id.* 40:17–19; *see also id.* 138:19–139:2 (stating that, when the Ambassador refused to request that Plaintiff remain at Embassy Malabo, "[Plaintiff] had just informed [the Ambassador] that [Plaintiff] was filing a grievance on this case" and "[the Ambassador] felt [Plaintiff] needed the time to be able to focus on that without having to handle all other issues that we needed to be doing during an election").)

However, the Ambassador's references to grievances in her deposition can be more aptly characterized as an interpretation, based on a history of experience with discretionary decisionmaking, of the rationales behind Defendant State Department's policy, rather than proof of targeted retaliation. DCM Zabriskie recalls that the Ambassador explained that Plaintiff "would not be able to focus on her legal cases if she were expected to simultaneously carry out the demanding responsibilities of her portfolio" and that "*this is precisely why [Defendant State Department] allows people to return to headquarters while their cases are pending.*" (Zabriskie Aff. ¶ 54, Pl.'s Ex. 21, ECF No. 233-1 (emphasis added); *see also* Zabriskie Dep. 108:19–109:6 ("I believe that [Ambassador Furuta-Toy] at one point stated that her experience was it was

better for the employees to have time in Washington to fully dedicate to their issues, to whatever legal cases they were working on.").)[4] Even if the Ambassador's comments were evidence of inappropriate considerations outside of the realm of what is to be contemplated by supervisors under the policy—and the Court does not believe that a reasonable jury would consider them as such—the comments do not rise to the level of seriousness needed to support an inference of causation. *Cf. Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("A recurring point in [Title VII] opinions [involving discrimination claims] is that . . . offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'").

Third, Plaintiff's argument that the Bureau of Consular Affairs' briefing of Ambassador Furuta-Toy on Plaintiff's grievances supports an inference of causation is not persuasive. Defendants point to the absence of any reference to Plaintiff's grievances on the briefing checklist for the meeting between the Bureau of Consular Affairs and Ambassador Furuta-Toy as evidence that those grievances were not a subject of the briefing. (Defs.' SUMF ¶ 59.) Plaintiff contends that, because a portion of the briefing checklist is redacted, there is no way of knowing whether the redacted matters were discussed during the briefing. (Pl.'s Response to SUMF ¶ 57.) Plaintiff adds that the deposition testimonies of Ambassador Furuta-Toy and PDAS Donahue, which denied that Plaintiff's grievances were a subject of the briefing, are not credible or

---

[4] Plaintiff has filed at least four actions in the U.S. District Court for the District of the Virgin Islands (Civ. Nos. 14-20, 16-63, 17-48, and 17-61); at least three appeals in the U.S. Court of Appeals for the Third Circuit (Civ. Nos. 16-1788, 18-3344, and 19-2745); at least two actions in the U.S. Court of Federal Claims (Civ. Nos. 16-1006C, 17-0179C); at least one action in the U.S. District Court for the District of Columbia (Civ. No. 16-2316); and at least one appeal in the U.S. Court of Appeals for the Federal Circuit (Civ. No. 18-1519). Plaintiff has filed at least eight grievances before the FSGB (Case Nos. 2015-035, 2015-045, 2015-046, 2016-001, 2016-036, 2017-014, 2017-030, and 2018-049). (Defs.' Ex. 25.)

plausible. (*Id.* ¶ 59.) In support of the latter proposition, Plaintiff cites deposition testimony suggesting that Marjorie Ames, the Executive Director of the Bureau of Consular Affairs who approved the checklist, knew that Plaintiff "had a dispute with [Defendant State] Department" and "had filed an EEO complaint." (*Id.* ¶ 59 (citing Ames Dep. 27:16–28:4, Pl.'s Ex. 36, ECF No. 234-6).) While PDAS Donahue did not recall his meeting with Ambassador Furuta-Toy, Plaintiff cites sections of PDAS Donahue's deposition testimony to demonstrate his "selective remembering" and attempt to undermine his credibility. (*Id.* (citing Pl.'s Ex. 38, ECF No. 234-8).) Moreover, Plaintiff argues that, because PDAS Donahue and Executive Director Ames played a role in denying Plaintiff the opportunity to serve as a backup consular officer at Embassy Malabo, a decision that Plaintiff challenged as an EEO violation, "[i]t is not credible that [the grievance] . . . would not have been foremost in PDAS Donahue's mind when he briefed Ambassador Furuta-Toy." (*Id.*)

Even though the question of whether and how the Bureau of Consular Affairs briefed the Ambassador is relevant to the Ambassador's knowledge about Plaintiff's grievances, *see Daniels*, 776 F.3d at 196–97, bald assertions that Plaintiff's grievances are the topic of the redacted portion of a briefing checklist do not support an inference of causation. Likewise, Plaintiff's judgments regarding the credibility of deposed parties based on what could or must have been foremost in their minds do not support an inference of causation. Because Plaintiff has failed to establish that Defendants engaged in an adverse action and that her grievances caused an adverse action, a reasonable jury could not conclude that Plaintiff has satisfied her burden of proving a *prima facie* case of retaliation under the ADEA.

## IV.    Legitimate, Non-Retaliatory Reasons

Even if Plaintiff could satisfy her burden of proving a *prima facie* case of retaliation, she

would still fail to overcome Defendants' Motion for Summary Judgment. If a plaintiff is able to satisfy the burden of proving a *prima facie* case, "the burden of production shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action." *Daniels*, 776 F.3d at 193. "If the employer advances such a reason, the burden shifts back to the plaintiff to demonstrate that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Id.* (citation omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (citing *Reeves*, 530 U.S. at 143).

Defendants have satisfied their burden of presenting a legitimate, non-retaliatory reason for having transferred Plaintiff. "The employer's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500–01 (3d Cir. 1997) (internal quotations omitted) (Americans with Disabilities Act case). The non-retaliatory reasons that Defendants provide for transferring Plaintiff include: (1) that Plaintiff was denied tenure; (2) "that it would be detrimental to the needs of Embassy Malabo to have Plaintiff remain at post while on interim relief because there was no way to determine how long Plaintiff may be able to remain at post based on the indefinite and unpredictable nature of interim relief, and the fact that Plaintiff could be terminated at any time"; (2) "uncertainty in staffing"; and (3) "hardship for other employees that multiple temporary extensions of Plaintiff's assignment would create." (Defs.' Br. at 11–12.)

## V.    Pretext

In the private-sector context, once an employer has articulated legitimate reasons for its

adverse action, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious [retaliatory] reason was more likely than not a . . . determinative cause of the employer's action." *Daniels*, 776 F.3d at 198–99 (internal quotations omitted). In the analogous context of private-sector Title VII retaliation claims, "to prove causation at the pretext stage, the plaintiff must show that she would not have suffered an adverse employment action 'but for' her protected activity." *Young*, 651 F. App'x at 96 (citing *Univ. of Tex. Sw. Med Ctr. v. Nassar*, 570 U.S. 338, 133 S. Ct. 2517, 2533 (2013)). The Supreme Court relied upon Congress's use of the word "because" in Title VII's anti-retaliation provision in holding that a plaintiff must prove "but-for" causation to prevail on a Title VII retaliation claim. *Nassar*, 570 U.S. 349–50. In *Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009), the Supreme Court employed similar reasoning to hold that under § 623(a)(1) of the ADEA, which governs claims against employers in the private sector and state and local governments, "the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Id.* at 177.

The language of the federal-sector provision of the ADEA differs from the provisions of the ADEA governing discrimination claims and retaliation claims against private-sector employers—§§ 623(a)(1) and 623(d), respectively. The federal-sector provision of the ADEA provides that employees of executive agencies who are at least forty years of age "shall be made free from any discrimination *based on* age." 29 U.S.C. § 633a(a) (emphasis added); *see also Forman v. Small*, 271 F.3d 285, 298 (D.C. Cir. 2001) (ruling that § 633a waives sovereign immunity as to claims of retaliation, not just claims of age discrimination). By contrast, the ADEA provision governing discrimination claims against private-sector employers and state and

local governments makes it unlawful for an employer to "discriminate against any individual with respect to his . . . privileges of employment . . . *because of* such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). The ADEA provision governing retaliation claims against private-sector employers and state and local governments provides that "[i]t shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . *because* such individual . . . has opposed any practice made unlawful by this section." 29 U.S.C. § 623(d) (emphasis added).

The United States Courts of Appeal have diverged in their interpretations of and reliance upon this difference in diction, resulting in a split as to whether the ADEA's federal-sector provision requires a showing of "but-for" causation. *Compare Shelley v. Green*, 666 F.3d 599, 607–08 (9th Cir. 2012); *Babb v. Sec'y, Dep't of Veterans Affairs*, 743 F. App'x 280, 287–90 (11th Cir. 2018) (applying the "but-for" standard for discrimination and retaliation claims under the ADEA), *with Ford v. Mabus*, 629 F.3d 198, 206 (D.C. Cir. 2010) (rejecting the "but-for" standard and ruling that a federal-sector ADEA violation requires that "age [be] *a* factor in the employer's decision"). Other appellate courts have declined to rule on this issue, *see, e.g.*, *Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 74 (1st Cir. 2011); *Leal v. McHugh*, 731 F.3d 405, 414 n.8 (5th Cir. 2013); *Reynolds v. Tangherlini*, 737 F.3d 1093, 1096 (7th Cir. 2013), which was argued in a pending case before the Supreme Court on January 15, 2020 (Tr. of Oral Arg. at 1, *Babb v. Wilkie* (No. 18-882)).

Even if the proper causation standard required in an ADEA case is the less demanding standard set forth by the U.S. Court of Appeals for the D.C. Circuit in *Ford v. Mabus*—that is, whether protected activity was "*a* factor in the employer's decision"—Plaintiff has not offered sufficient evidence to satisfy her burden of production of showing that Defendants' proffered

reasons are pretextual.

To challenge the contention that Plaintiff was transferred because she was denied tenure, Plaintiff submits evidence demonstrating that other Foreign Service Officers who were denied tenure were not transferred to Washington, D.C. (Pl.'s CSOF ¶¶ 148–49 (citing Pl.'s Ex. 13; Molano Dep. 9:19–11:3, Pl.'s Ex. 69, ECF No. 237-9).) To challenge the contention that Plaintiff was transferred because of the needs of her post, Plaintiff submits evidence regarding the importance of her role at Embassy Malabo at the time of her transfer. (*See id.* ¶¶ 102–03 (citing 04-08-16 EER at 1, Pl.'s Ex. 65, ECF No. 237-5).) To challenge the contention that Plaintiff was transferred because of uncertainty in staffing, Plaintiff submits evidence suggesting that the Ambassador considered "continuity" of Plaintiff's portfolio to be a factor in her decision, as well as evidence that allegedly suggests that retaining Plaintiff at Embassy Malabo would have promoted continuity. (*Id.* ¶ 107 (citation omitted); *see also id.* ¶¶ 158–61 (citing Zabriskie Dep. 91:8–93:5; Defs.' Response to Follow-on Interrog. No. 3 at 14, Pl.'s Ex. 22, ECF No. 233-2).) To challenge the contention that Plaintiff was transferred because retaining Plaintiff at her post would have imposed hardships on other employees, Plaintiff submits evidence suggesting that other employees were able to do less election-related work as a result of Plaintiff's transfer (*id.* ¶ 109 (citing Lamm Dep. 29:9–19, Pl.'s Ex. 59, ECF No. 236-9)), as well as evidence that allegedly suggests that Plaintiff's transfer was a "hardship" for the post (Furuta-Toy Dep. 70:8–18, Pl.'s Ex. 7; Zabriskie Dep. 91:8–93:5, 137:5–15).

However, Plaintiff's challenges do not adequately satisfy her burden, at a minimum, of demonstrating that her protected activities were a factor in the Ambassador's decision not to retain her at Embassy Malabo. As discussed previously, the Court does not consider John Elliott a suitable comparator for assessing causation, either as part of Plaintiff's *prima facie* case or at

the pretext stage. *Cf. Young*, 651 F. App'x at 99 (determining in a Title VII retaliation case that two comparators were not "relevant comparators" for purposes of the court's pretext inquiry where the comparators did not have similar disciplinary records to the plaintiff). Furthermore, the concepts of "importance," "continuity," and "hardship" are inherently context dependent. Plaintiff had been denied tenure at the time of her transfer. Under Defendant State Department's policy, in the absence of rare circumstances, Foreign Service Officers who were denied tenure and granted interim relief from separation were transferred to Washington, D.C. Viewing this case with that context in mind, Plaintiff's conceptions of "importance," "continuity," and "hardship" are strained. Therefore, even if Plaintiff was able to satisfy her burden of proving a *prima facie* case of retaliation, she could not satisfy her burden of showing that Defendants' proffered reasons for not retaining her at Embassy Malabo were pretextual.

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted. An appropriate Order will follow.


Date: <u>January 31, 2020</u>                              */s/ Anne E. Thompson*
                                                            ANNE E. THOMPSON, U.S.D.J.